# CHARLESTON.

BENNETT *v.* PIERCE *et al.*

Submitted Sept. 15, 1898—Decided Dec. 14, 1898.

1. EQUITY PLEADING—*Answer*.

   If an answer presents no bar to the bill, or contains some matter not material, exception should be made to it, pointing out defects, and not a mere general objection should be made. (p. 655).

2. VENDOR AND VENDEE—*Deed—Title—Insolvency*.

   A purchaser who has accepted a deed of general warranty must generally pay the purchase money, and look to the warranty for indemnity against bad title ; but if the grantor is insolvent, or the warranty not binding, he will not be compelled to pay. if the title is defective, though he has not yet lost from its defects. (p. 657).

3. DEED—*Married Woman—Separate Estate*.

   A deed for land by a married woman alone, as one living separate and apart from her husband, must recite that fact, as also the fact that the land is her sole and separate estate ; otherwise, the deed is void. (p. 656).

4. DEED—*Married Woman—Acknowledgment—Separate Estate*.

   A certificate of acknowledgment of a deed for real estate made by a married woman alone, as one living separate and apart from her husband, must state that it has been proven to the satisfaction of the officer that the real estate is the sole and separate property of the woman, and that she was at the date of the deed, and still is, at the date of the certificate, living separate and apart from her husband; otherwise, the deed is void. p. 656).

Appeal from Circuit Court, Barbour County.

Bill by Maggie Bennett against W. N. Pierce to sell a a tract of land for purchase money. Pierce tendered an answer which was rejected. From a decree on the bill as confessed, defendant appeals.

*Reversed.*

J. HOP WOODS, for appellant.

DAYTON & DAYTON and FRED O. BLUE, for appellees.

BRANNON, PRESIDENT:

This suit was in equity, in the circuit court of Barbour County, to sell a tract of land for purchase money, for which a lien was reserved in a deed from Maggie Bennett, the plaintiff, to W. N. Pierce, defendant, resulting in a decree of sale, from which Pierce appeals.

Pierce tendered an answer, which was rejected. The court went on to decree on the bill as confessed. The appellant assigns the rejection of this answer as error. The answer was rejected on mere general objection, no cause of objection being specified. I suppose it was intended as, in effect, a demurrer, asserting that the answer presented no bar. I question whether, under strict equity practice, an answer can thus be rejected without exception. Likely, if the answer presents no bar to the bill, its rejection on a general objection would be good on appeal. It would be dangerous if the answer contained some good, some bad, matters, as the overruling of a general objection would not then be error. There is no demurrer to an answer. Objection must be made by exception. Exceptions are not formal, but must be written and point out grounds of exception. It is better practice to use them, though I think the practice is loose with all of us in this State under this head. We let answers go in for what they are worth, and go on to proof on both sides, and spend much time and cost, and at last the whole answer, or parts of it, are held to present no bar. The court would, at the start, have rejected the whole or parts of the answer if called on by exceptions, and thus saved much cost and delay. By exceptions, we eliminate from the case answers presenting no bar in law, or such parts as do not, and shorten the case. 1 Enc. Pl. & Prac. 895; *Richardson* v. *Donehoo,* 16 W. Va. 685. And I just notice that JUDGE LUCAS entertained the same doubt I entertain, whether such an objection can avail a plaintiff, in *Arnold* v. *Slaughter,* 36 W. Va. 589, (15 S. E. 250). Such general objection may, under the liberal rules of equity practice, be good where it goes to the whole answer as presenting no bar, but will not avail where only some matters are objectionable.

Let us, then, see whether this answer presents a bar. It alleges that Mrs. Bennett derived title through certain deeds from parties who were heirs of John Dalton, some of them married women, and it points out that certificates of their privy examination were defective. One of these deeds, dated February 18, 1880, is fatally defective, in the fact that the certificate as to four married women omits the requisite statement, "and having the writing aforesaid fully explained to them." *Watson* v. *Michael*, 21 W. Va. 568. The deed of December 7, 1882, is bad because the justice certifies that Phebe Male and husband appeared together, and made a joint acknowledgment—bad under *McMullen* v. *Egan*, 21 W. Va. 233. And it is bad because in the second clause of the certificate it says: "And the said———, wi———of the said———, being at the time," etc., not giving name of husband or wife; rendering this second part, containing essentials, nugatory. The deed of February 6, 1884, is void as to Ary J. Barnes, as it does not show on its face that the land is her separate estate, and she living separate and apart from her husband. No authority is cited for this position, save section 3, chapter 66, Code 1868; but that seems all-sufficient. I have not met with any case. It is not necessary to give authority to show that at common law a married woman cannot convey land, and can now convey only as statute allows. Under our statute, a wife cannot convey even her separate land without her husband in some way uniting in the deed, except that, if she is living separate and apart from him, she may alone convey; but she must do so in the mode pointed out, and that is that the deed shall recite that the land is her sole and separate property, and that she is living separate and apart from her husband; and, further, the certificate of acknowledgment must show that it was proven to the satisfaction of the officer making it that such were the facts. These matters are not recited in this deed. I think, too, the certificate is defective in not stating that it was proven "to his satisfaction" that the property was her sole and separate property, and that she was living separate and apart from her husband; and the Code says that the certificate must state that "all of said facts were shown to the satisfaction" of the officer. It requires him

to say that the proof showed these facts to his satisfaction.
It requires his finding on the evidence. Strictness is
required, because it may turn out otherwise, and the deed
be overthrown. The certificate merely says that Mrs.
Barnes made affidavit that the land was her sole and sepa-
rate estate, and hardly that she was living separate. As a
married woman can only convey as statute points out, and
the cases require close compliance with their require-
ments, I think this is a fatal defect. Every material fact
must be stated in the certificate, to make a deed valid.
1 Am. & Eng. Enc. Law, 538. These are material facts.
Deeds are not good if they do not exist. The justice must
find them. These defects make these deeds null and void
as to the married women. They never conferred their
estates in the land.

Next comes the question, shall Pierce be compelled to
pay the balance of purchase money with these grave
defects in the title of his grantor? *Heavner* v. *Morgan*,
30 W. Va. 335 (4 S. E. 406), and *Heavener* v. *Morgan*, 41
W. Va. 428 (23 S. E. 874), would answer "No," as those
cases say that equity will not force a purchaser to complete
an executory contract, and pay purchase money, when
there is a defect of title. But that was a case of an execu-
tory contract; this is a case of a deed with general war-
ranty. Must the purchaser pay, and wait till he is
attacked, and then resort to his warranty? There is a
difference, but the subject is so trite that I will not redis-
cuss it, but simply refer to opinion in *McClaugherty* v.
*Croft*, 43 W. Va. 270, 272 (27 S. E. 246), showing that,
where one accepts a deed with general warranty, he will
not be compelled to pay purchase money, and thus lose a
fund in his own hands for indemnity, where the grantor is
insolvent, and title defective. There are two reasons why
that law should be applied in this case. The answer
alleges Maggie Bennett's insolvency. Under the general
objection to the answer, it must, as if on demurrer, be
taken as true. But it alleges, and it is shown by the deed,
that Maggie Bennett is a married woman, and therefore
her warranty does not bind her to the personal covenant
of warranty, but only to pass her estate in the land. Code
1891, c. 73, s. 6; *Sine* v. *Fox*, 33 W. Va. 521 (11 S. E. 218).

Counsel would here draw a distinction, saying that this rule does not apply where the land is separate estate, and that in such case the covenant does bind the woman as if single, and that *Sine* v. *Fox* was not the case of a deed of separate estate. But there is the positive provision that such covenant shall not bind the wife, personally, and there is no exception of a deed for separate estate, though that section provides as to conveyance by a wife living alone, of her separate estate. Only the legislature can put such an exception in the statute. Here we must remember that by common law a married woman cannot contract. Whether by law at the date of this deed (June 27, 1895), this covenant would bind her, if it were not for section 6, chapter 73, limiting its effect, it is not necessary to say; but as to this particular contract that limitation stands in the Code unchanged.

Counsel argue that Pierce must wait till his title is attacked. Not so. He is a defendant seeking to keep in his pocket a fund for his indemnity.

Counsel for Mrs. Bennett also say that it has been seventeen years since these defective deeds were made, and that the rights of these married women were barred by limitation and laches. As to limitation : If this land was not separate estate, limitation would not operate against the married women until the death of their husbands ; otherwise, if it were separate estate. Code, c. 104, s. 3; *Randolph* v. *Casey*, 43 W. Va. 289 (27 S. E. 231). The record does not tell us when John Dalton died, and the land vested in his children; whether it was before or after April 1, 1869. The husbands are presumed to be yet living. Moreover, there is nothing to show that Rolley C. Bennett, grantee in the defective deeds, or Pierce, grantee of Maggie Bennett, ever had actual possession. Deeds confer constructive possession; but, under the statute, actual possession must be shown by him asserting it. *Industrial Co.* v. *Schultz*, 43 W. Va. 470 (27 S. E. 255); *Koiner* v. *Rankin's Heirs*, 11 Grat. 420; *Overton's Heirs* v. *Davisson*, 1 Grat. 211; Busw. Lim. § 236. It is unquestionable that where a purchaser takes actual possession under a deed purporting to convey legal title, and not under an executory contract, the possession of grantee is

adverse to the vendor (*Core* v. *Faupel*, 24 W. Va. 238).
Even if the deed is void *Randolph* v. *Casey*, 43 W. Va. 289
(27 S. E. 231); *Swann* v. *Thayer*, 36 W. Va. 46 (14 S. E. 423);
*Mullen's Adm'r* v. *Carper*, 37 W. Va. 215 (16 S. E. 527).

So, if it should appear that John Dalton died after April 1,
1869, descent casting on his daughters a separate estate,
and that Rolley C. Bennett and Pierce, taking their actual
possession, had such possession for ten years, the married
women would be barred, and time would cure the vice in
said deeds; but the facts on which this proposition rests
are not before us. It is not necessary to discuss laches of
these married women, as it is a question of statutory limi-
tation. If the statute does not bar out their title, laches
will not; and, if the statute applies, it is useless to consider
laches. This rejected answer presented a good bar to the
bill until it was repelled, and it was error to reject it. We
therefore reverse the decree, and remand the case, with
direction to allow the answer to be filed.

*Reversed.*