# CHARLESTON.

## SHUMATE V. SHUMATE *et al.*

### Submitted March 7, 1916.    Decided June 3, 1916.

1. CURTESY—*Right—Desertion—''Leave.''*

    A husband, who leaves his wife except for cause such as would entitle him to a divorce, and, without any intention of renewing cohabitation with her, takes up his residence in another state, where he thereafter continuously resides in disregard of his marital obligations, leaves her within the meaning of section 16, chapter 65 of the Code, and is barred of curtesy in her real estate, although he registers as a voter and votes in this state, is assessed with and pays taxes on personal property and personally supervises farming operations on his lands therein, thereafter leases such property in consideration of support and maintenance of himself and family and payment of taxes, occasionally visits his family and upon the request of his wife transacts business for her, but, though ostensibly friendly, each treats the other on such occasions as a stranger to the marriage tie. Under such circumstances, a deed executed by him, purporting to convey curtesy in her real estate, passes no interest therein to the grantee. (p. 577).

2. HUSBAND AND WIFE—*Married Women—Conveyances.*

    An instrument purporting to be a deed, granting the separate estate of a married woman living apart from her husband, though upon a consideration deemed valuable in law, and signed, sealed, and acknowledged by her, the husband not joining therein, is void as a conveyance, unless the acknowledgment appended thereto contain the recitals required by section 6, chapter 73 of the Code, but such instrument is valid as a contract of sale enforceable against her and her heirs. (p. 580).

(POFFENBARGER, JUDGE, dissenting).


Appeal from Circuit Court, Mercer County.

Bill by John R. Shumate against H. H. Shumate and others. From decree awarding partial relief plaintiff appeals.

*Affirmed in part.    Reversed in part.    Remanded.*


*B. W. Pendleton* and *Sanders, Crockett & Kee,* for appellant.

*John R. Pendleton* and *Woods & Martin,* for appellees.

Mason, Judge:

By an instrument in writing, bearing date December 14, 1911, sealed and acknowledged by her, Elizabeth Shumate, a married woman, living separate and apart from her husband, undertook to convey her separate real estate to her son, the plaintiff, John. R. Shumate. Her husband did not join in the execution of the paper; nor did it, or the certificate of acknowledgment, contain the recitals required by sec. 6, ch. 73, Code. She died in April, 1912. In June of the same year, R. A. Shumate, her husband, conveyed to his children then living and the heirs of such of them as were dead his curtesy in his wife's lands. John R. Shumate thereupon filed this bill, praying cancellation of the deed for such interest as a cloud on his title, a declaration of the validity of the deed to him for his mother's lands or its validity as a contract to convey, and enforcement as such against her husband and heirs at law should the court be of opinion by reason of the noncompliance with the provisions of the statute cited the instrument so made was ineffectual as a conveyance of his mother's lands. From a decree awarding cancellation of the deed made by the father, but denying other relief, plaintiff has appealed; and defendants cross-assign error.

Relief by cancellation was predicated upon sec. 16, ch. 65, Code, saying: ''If a husband of his own free will shall leave his wife except for cause such as would entitle him to a divorce, he shall be barred of his curtesy in his wife's estate, unless she afterwards become reconciled to and live with him as his wife.'' That R. A. Shumate voluntarily left his wife Elizabeth some time about the year 1905, and moved to Narrows, Va., where he has since continuously resided, and at no time thereafter resumed actual or virtual cohabitation with her, the testimony fully establishes; as it also does the complete negation of any cause therefor traceable to her conduct. The absence of any insinuation of lack of devotion or loyalty on her part to her matrimonial vows, warrants the conviction that she was in every respect faithful to her husband, and tolerant to his faults and foibles, from which, as we shall see, he was not wholly immune. The only charge affecting her faithfulness to him was that she refused his request to accom-

78 W. Va.

pany him to Narrows and there abide as his wife. He alone testifies to this fact. While it is hardly conceivable that at no time within the period of his protracted absence the wife and mother withheld from her children information of such request and refusal,' not one of them was called to corroborate such statement, although evidently imbued with positive animosity against the plaintiff. But to his wife, R. A. Shumate attributes a reasonable excuse for declining the proposed change of residence, that excuse being her solicitude for the safety and welfare of three mentally defective children, the result of their marriage. These he did not intend to take to the Virginia Home, but to leave them in the care and custody of the plaintiff, at the Mercer County home. But, though not brought to the attention of the court by any pleading filed in the cause by any of the parties, the adulterous conduct of the husband, and father, before and after the separation, abundantly established by proof, affords the most plausible reason for his selection of a residence remote from the abode of his wife and children, where, unmolested and unobserved by them and his neighbors, he could, as he actually did, freely indulge in the unlawful gratification of his lustful passions, and strongly tends to negative his invitation or desire that his wife accompany him to the proposed new residence.

By way of cross-assignment, defendants deny the sufficiency of the evidence to prove abandonment, and contend that the facts of abandonment and intention to abandon are successfully controverted by proof tending to show that R A. Shumate made ample provision for the maintenance and support of his family composed of his wife and the three defective children, that thereafter he registered as a voter and occasionally voted in Mercer County, was assessed there with and paid taxes on personal property belonging to him and paid poll tax charged to him, gave personal attention to such property, at frequent intervals visited his wife, transacted business for her at her request, was present during her illness and when she died and attended her funeral. But they did not then or at any other time subsequent to the separation, so far as the proof shows, occupy the same rooms or apartments on such occasions, or, although ostensibly friendly, act toward each

other as those bound together by marital ties. Moreover, it will be observed that the statute cited does not as does sec. 6 of the chapter on divorce, use the word "abandon", but declares that if a husband "leave" his wife except for cause such as would entitle him to a divorce, he shall be barred of his curtesy in her lands.

But, assuming that by this enactment the Legislature meant an abandonment such as would justify a divorce, an assumption not readily inferrable from the language used, does not the evidence abundantly support the conviction that R. A. Shumate did in fact abandon his wife? Actual separation by one party to the matrimonial union, co-incident with the intention to abandon, constitute statutory ground for dissolution of the marital ties. *Burke* v. *Burke,* 21 W. Va. 445; *Tillis* v. *Tillis,* 55 W. Va. 198. Within this definition falls the act and conduct of R. A. Shumate. He abandoned his wife, with the intention not to resume cohabitation with her. To several persons, who bear testimony to his statement, he declared, when leaving, that he did not intend to return to his Mercer County home. Nor, as heretofore observed, did he thereafter renew cohabitation with his wife.

Voluntary withdrawal from cohabitation, concurrent with an intention to forsake and not return, constitutes abandonment within the meaning of the divorce statutes. The duration of the separation in excess of the time fixed by law is important only in so far as it tends to emphasize the element of intent. *Moore* v. *Stevenson,* 27 Conn. 14. In *Stock* v. *Mitchel,* 252 Ill. 530, similar facts were held sufficient to show bar of the husband's right to curtesy, under the Illinois statute, in the deceased wife's lands. Where a husband is dissipated, lives apart from his wife, and contributes nothing to her support, and she engages in business on her account, this is such an abandonment, within the spirit of the statute, as will justify the award of a decree of divorce from him. *Shields* v. *Bellman,* 74 Tenn. 488; *Walker* v. *Strongfellow,* 50 Tex. 570. While many cases prescribe as one of the conditions of abandonment failure of the husband to provide for the wife's maintenance, R. A. Shumate likewise substantially falls within the same category. At the time of the separation

he made no provision for his wife's support, although about a year thereafter he leased one of his farms to the plaintiff, the conditions being payment of taxes thereon and support of himself and his wife and their defective children. Though upon facts more conclusive on the question of abandonment, the case of *Buford* v. *Adair,* 43 W. Va. 211, supports the views we have expressed on the sufficiency of the facts proved to show the abandonment relied on by plaintiff. *Wills* v. *Wills,* 82 S. E. 1092, cited by appellees, shows conduct wholly variant from the acts of R. A. Shumate.

These conclusions effectually dispose of defendant's cross-assignments, and lead to an affirmation of the decree in so far as it grants plaintiff's prayer for cancellation.

While it is essential to the validity of a deed conveying the separate estate of a married woman living with her husband that it be signed by her and her husband and acknowledged, in order to make it a valid contract conveying her estate, we see no reason why a married woman living separate and apart from her husband may not make a valid contract of sale of her separate estate, enforceable in a court of equity. A deed void for want of formality may nevertheless be good as a contract and pass the equitable title. 1 Pom. Eq. Sec. 383; *Atkinson* v. *Miller,* 34 W. Va. 115; *Boggess* v. *Scott,* 48 W. Va. 316; *Virginia Coal & Iron Co.* v. *Roberson & Wife,* 88 Va. 116. Mrs. Shumate's deed, although not executed and acknowledged in the formal manner prescribed by sec. 6, ch. 73, Code, was sufficient to convey her equitable title; it was a binding executory contract. The land which she attempted to convey was her separate estate, and she was then living separate and apart from her hsuband. The question presented is *res integra.* All the cases heretofore decided involving the validity of contracts or deeds for the separate lands of married women were cases in which the wife and husband were living together. In such case the statute creating separate legal estates expressly requires the husband to join in the wife's contract of sale as well as in her deed; and it has been held that her acknowledgment, in such case, is also necessary. The power of a married woman to dispose of her statutory separate real estate depends, of course, on statute law. At common law she

had no such estate, and she was incapable of alienating her common-law estate during coverture, for two reasons. First, she was considered, in law, as one with her husband; and second, her husband was supposed to have a constraining influence over her. The English courts, however, devised first what is known as a fine, and later the common recovery where by her title could be transferred. These were collusive suits brought by the intended grantee against her and her husband, which were ended either by a compromise or by a default judgment for the land. In order to protect the wife against the husband's supposed constraint, she was required to appear in court before judgment was rendered and be examined, separately and apart from her husband, so as to satisfy the court that she fully understood the transaction and freely assented to it. That method of affecting a transfer of the wife's common-law estate continued in vogue in England until 1834, and is the origin of the wife's privy examination adopted in Virginia by statute passed in 1748 empowering a married woman to convey by a deed. 5 Henning's Stat., 410. That statute was adopted by this state, on its formation, and continued to be the law, without material modification as to the form of the wife's acknowledgment, until 1891, when her privy examination was abolished.

Prior to the 1st of April, 1869, when the new code took effect, separate estate was a creature of equity only, and the power the wife had of disposing of it depended on the instrument by which it was created. She could be, and frequently was, authorized to dispose of it without her husband's consent. There being no impediment to her disposing of her separate equitable estate in the manner provided by the instrument creating it, there can be no impediment to her disposing of her separate legal estate, if the statute permits her to do so. That the Legislature has authorized a married woman, living separate and apart from her husband, to contract for the sale of her separate legal estate, we think, is clear. Sec. 3, ch. 66, Code, creating such estates, empowers a married woman to "convey and devise real and personal property and any interest or estate therein, and the rents, issues and profits thereof, *in the same manner, and with the like effect* as if she were

unmarried.'' If the statute stopped here, there could be no
question of a wife's right to dispose of her real property with
as little formality as if she were a feme sole. That is what the
words, ''in the same manner, and with the like effect,'' mean;
and they would dispense with the necessity of both the wife's
acknowledgment and the joining of her husband. Otherwise
these words in the statute would have no effect. There is,
however, a proviso, or exception, which limits her power to
sell and convey her real estate, and prescribes the only mode
by which she may do it, i. e., her husband must ''join in the
deed or other writing by which the same is sold or conveyed.''
But the proviso applies only to married women who are living
with their husbands. It expressly excepts from its operation
married women living separate and apart from their hus-
bands. The proviso reads: ''Provided, that no married wo-
man, unless she is living separate and apart from her hus-
band, shall sell'' etc. Language could not be employed that
would any more clearly show the legislative purpose to except
from the proviso a married woman living separate and apart
from her husband, and to confer on her equal power with the
feme sole to dispose of her real estate. Although sec. 3, ch.
66, says nothing in regard to a married woman's acknowledg-
ing her deed or contract of sale, but only requires the husband
to join, it was questioned, but not decided, in *Radford* v. *Car-
wile*, 13 W. Va. 572, whether or not her acknowledgment was
not also necessary; and later the question arose in *McMullen*
v. *Eagan*, 21 W. Va. 233, and it was expressly decided that
her acknowledgment was essential. Says Judge GREEN, in his
opinion in that case, at page 246: ''It would be unreason-
able to construe this section (sec. 3, ch. 66) as authorizing a
married woman to convey her separate real estate, simply by
her husband joining with her in the deed without any privy
examination of her, for we would then construe this section
as taking away from married women a protection against the
undue influence of husband, which has always been afforded
her by our law and which protection the courts had steadily
upheld in its full vigor. It cannot be supposed that the Leg-
islature intended to do this, as the very object of this chapter
66 of our Code, p. 497, was to give to married women increased

protection of their property against both the husband and his creditors; an effort, which to a large extent, would be defeated if we were to construe this third section as dispensing with the privy examination of the wife when she conveyed her real estate, if it was her separate property.'' That decision has been uniformly followed as the law applicable to such cases. But it was expressly confined to the case of a married woman *living with her husband.* See pt. 4, syllabus. Numerous subsequent decisions preserve the same distinction. It must also be remembered that that decision was rendered before privy examination was abolished. The reason given by the learned judge for requiring the additional safeguard of privy examination does not apply in the case of a wife living separate and apart from her husband. A wife so living is not supposed to be constrained or influenced by her husband. The reason for the rule requiring an acknowledgment by a wife living with her husband being wanting in the case of a wife not living with her husband, why should the rule itself be applied? Is it not reasonable to infer from Judge GREEN's opinion that if the statute had not then required the privy examination of the wife, he would not have held her acknowledgment to be essential?

It is said that Chapter 66 does not impliedly repeal Sec. 6, ch. 73 of the Code. But that section deals only with deeds, not with executory contracts of sale. It prescribes the form of a deed by a married woman living separate and apart from her husband, and says the deed and acknowledgment thereto must both recite the fact that she is living separate and apart from her husband, and no officer is authorized to certify her acknowledgment until that fact is proven to his satisfaction. Contrary, however to the rule adopted by the courts of Virginia and of this state, respecting the conclusive effect of the certificate of privy examination and acknowledgment of a married woman living with her husband, the certificate of acknowledgment by a married woman living separate and apart from her husband is expressly made only prima facie evidence of the facts therein stated. *Harkins* v. *Forsythe,* 11 Leigh 294; and *Rollins* v. *Menager,* 22 W. Va. 461. That evinces a purpose to make the validity of the deed depend

upon the fact rather than the form of the deed. That provision of section 6, chapter 73, was first incorporated in the Code of 1869, along with section 3, chapter 66. But it prescribed the form of a deed only, not of a contract of sale. We find no statute prescribing any particular mode by which a married woman, living separate and apart from her husband, may contract for the sale of her separate real estate, and sec. 3, ch. 66, expressly says she may do so "as if she were unmarried."

That section 6 of chapter 73 does not relate to executory contracts is shown by the purpose intended as well as by the terms employed. The first part of it says, "such writing shall operate to convey from the wife her right of dower in the real estate embraced therein, and pass from her and her representatives all right, title and interest of every nature which, at the date of such writing, she may have in any real estate *conveyed thereby,* as effectually as if she were, at said date, an unmarried woman." The words "such writing" refer to the writing mentioned in section 4 of this chapter, purporting to convey real estate. It was certainly not intended to make an executory contract, which did not even purport to convey real estate, operate to pass the wife's title. It was the legislative purpose to give such effect only to instruments which purported to convey title; and in construing sec. 3, ch. 66, so far as it related to the executory contract of a married woman, living with her husband, for the sale of her separate estate, this court has held that the same formality required for her deed is necessary. The reason for that holding is found in the very terms of sec. 3, ch. 66, which do not permit a married woman, living with her husband, to sell or convey her real estate without her husband's joining, to which this court has added, by construction, her acknowledgment as a further and necessary protection to the wife. In that part of sec. 6, ch. 73, relating to a married woman living separate and apart from her husband, the very term "deed" is used, which, of course, means a deed of conveyance. It does not embrace an executory contract.

Sec. 3, ch. 66, was not designed simply to create legal separate estates and protect married women in the enjoyment there-

of, but it was intended to enlarge their powers of control and disposition of such estates also, except in the case of a sale and conveyance by a married woman living with her husband, which required the same formality as the law previously required respecting a conveyance by her of her common-law estate, and except also a conveyance, but not an executory contract, by a married woman living separate and apart from her husband, which had to be according to the form prescribed in sec. 6, ch. 73.

The fact being established in this case that Mrs. Shumate was living separate and apart from her husband on account of no fault of hers, at the time she attempted to convey her land to appellant, her deed should be given the effect she intended it to have. The equity of the case demands it, and the rules of law do not forbid it.,

These conclusions lead to the affirmation of the decree in so far as it decrees that the defendant R. A. Shumate is barred of the right of curtesy in the lands of Elizabeth Shumate and that he acquired no title therein as husband of said Elizabeth Shumate in the lands of which she died seized and now in controversy in this cause, and that the deed executed by the said defendant R. A. Shumate to the defendants Susan A. Brown, Harvey M. Shumate, Ballard P. Shumate, Arthur T. Shumate, Sallie V. Johnston, Nina Shumate, Pearl Hall, Laura Showalter, George Shumate, and Arly Shumate, bearing date the 20th day of June, 1912, purporting to convey to them the life estate of the said R. A. Shumate in the land in controversy in this suit as tenant by the curtesy, is null and void and of no effect; and that the said deed bearing date the 20th day of June, 1912, and recorded in the office of the clerk of the county court of Mercer County, West Virginia, in Deed Book 83, at page 462, executed by the defendant R. A. Shumate to the defendants Susan A. Brown, Harvey M. Shumate, Ballard P. Shumate, Arthur T. Shumate, Sallie V. Johnston, Nina Shumate, Pearl Hall, Laura Showalter, George Shumate, and Arly Shumate, should be set aside and annulled; and so much of said decree as decides that the deed executed by Elizabeth Shumate to the plaintiff John R. Shumate, dated the 14th day of December, 1911, is void as a deed of convey-

ance; but said decree is reversed in so far as it decrees that said deed is void as a contract of sale. The plaintiff is entitled to a decree perpetuating the injunction and to a decree declaring that said deed, dated the 14th day of December, 1911, is valid as a contract of sale, and requiring the heirs of Elizabeth Shumate to specifically perform said contract by conveying the legal title to him by deed with covenants of special warranty; and this cause will be remanded to the circuit court of Mercer County for further proceedings to be had in accordance with the foregoing directions.

*Affirmed in part. Reversed in part. Remanded.*