# CHARLESTON.

WEHRLE V. PRICE *et al.*

Submitted September 6, 1917.   Decided September 18, 1917.

1. HUSBAND AND WIFE—*Conveyances—Presumption.*

   Where a husband is trustee holding the legal title to land in trust for his wife, and joins her in the execution of a deed therefor, in the capacity of trustee, it will be presumed that he thereby consented as husband to her making the deed.   (p. 667).

2. SAME—*Conveyance—Certificate.*

   So much of the form of the certificate of acknowledgment, set out in Sec. 4, Ch. 73, Code, to be made by a husband and wife to their joint deed, as provides for certification of the marital relation, is merely directory; and a deed for the wife's land, made and acknowledged by both husband and wife, is not void because the marital relation does not appear on the face of the deed or in the certificate of acknowledgment.   The relationship may be proven by evidence dehors the writing.   (p. 668).

   (POFFENBARGER, JUDGE, dissenting.)

Case Certified from Circuit Court, Kanawha County.

Action by H. L. Wehrle against A. E. Price, trustee, and others.   To a bill of review filed by Elsie Price, an infant, by her next friend, defendants demur.   The demurrer was overruled, and the case certified.

*Reversed and remanded.*

*Edward M. Burdette, Malcolm Jackson, H. D. Rummel* and *Donald O. Blagg,* for plaintiff.

*J. E. Springton,* for defendants.

WILLIAMS, JUDGE:

To a bill of review filed in the circuit court of Kanawha county by Elsie Price, an infant, by Jessie James her next friend, to review and set aside a compromise decree made on the 29th of May, 1912, in a chancery suit brought by H. L. Wehrle against A. E. Price, trustee, and others, the defendants demurred.   The court overruled the demurrers, and, pursuant to the provisions of Sec. 1, Ch. 135, of the Code, as

amended by chapter 69, Acts 1915, at the request ·of the parties, certified to this court for its determination two questions of law arising on said demurrers: (1) Whether the compromise decree was binding on the infant, Elsie Price; and (2) Whether a certain deed of date April 18, 1902, from James A. Price, trustee, and Mary J. Price to Ethel Price is a valid conveyance.

This court was formerly of the opinion that the demurrers had been properly overruled and, at a former term, to-wit,. on the 13th of February, 1917, entered an order sustaining the action of the circuit court. Petition for a rehearing was filed and a rehearing granted.

If the contention of demurrants, that the deed mentioned in the second question operated to pass to Ethel Price a fee simple title to the land involved in the litigation, the answer to the question first propounded becomes immaterial, because, in that event, Elsie Price is clearly not prejudiced by the compromise decree of which she complains.

In 1865 Archibald Price, and others, conveyed to James A. Price, trustee for Mary J. Price 98 acres of land in Kanawha county. No powers were expressly conferred upon the trustee by the deed; he was merely a dry trustee holding the legal title for Mary J. Price, and her heirs.

On the 18th of April, 1902, Mary J. Price and James A. Price, trustee, executed a deed to ''Ethel Price and the heirs of A. O. and Ethel Price,'' for 31 acres, part of the 98 acre tract. The bill avers that James A. Price was husband of as well as trustee for Mary J. Price, but the marital relation does not appear either on the face of the deed or in the certificate of acknowledgment thereto. The deed purports to be made by Mary J. Price and James A. Price, trustee, and is so signed and acknowledged. It is contended by counsel for the infant, Elsie Price, that the deed is inoperative to pass the title of Mary J. Price, because she was a married woman, and it is not made to appear either on the face of the deed or in the certificate of acknowledgment thereto that her husband joined her in the execution thereof. It is averred in the bill and, for the purposes of passing on the demurrers, must be taken as true, that James A. Price, the trustee, was

also her husband. On the other hand, counsel for demurrees contend that it should appear from the deed itself, or the acknowledgment thereto, that he joined in the execution of it in his capacity as husband. It is well settled that a married woman's deed has no effect to pass her estate in land unless her husband joins her in the execution thereof. This court has decided that it is not necessary the relationship should appear on the face of the deed itself; that it is sufficient evidence of his consent if he signs the deed with his wife and acknowledges it. *Morgan* v. *Snodgrass,* 49 W. Va. 387. Was it necessary for James A. Price to sign the deed in his dual capacity as trustee and also as husband in order to evidence his consent as husband? We do not think so.

Being both trustee and husband, it is inconceivable that he should have joined his wife in the former capacity for the purpose of conveying the legal title to land in which his wife had the complete equity, and not thereby have intended to express his consent in the latter capacity, which was indispensable to the validity of the wife's conveyance. It was not necessary for him to designate the capacity in which he signed in order to give effect to his signature in whatever capacity it was necessary for him to act.

Does the acknowledgment show a substantial compliance with the statute respecting acknowledgments by husband and wife? The statute nowhere expressly declares that the relationship must be certified. But Sec. 4, Ch. 73, Code, says it must be to the "following effect", and then in the form given uses words showing the marital relation. But if the relation does in fact exist, is the failure to certify it fatal to a married woman's deed? If a married woman should fraudulently induce someone to impersonate her husband in order to give effect to a deed in the execution of which her husband was not willing to join, and the officer taking the acknowledgment should certify that they were husband and wife, his certificate would certainly not be conclusive of the fact, although, under our law, the officer's certification is a quasi judicial act. Even when the privy examination of the wife was necessary, the certificate was conclusive, when not fraudulent, of every material fact required by the statute to

be certified. If his certificate is not conclusive, as to the fact of relationship, how then can the omission of it from his certificate be material? If the relationship, even though certified, can be successfully denied, when it does not exist, and the deed thereby avoided, why then, for like reason and with equal propriety may it not be shown to exist, when the certificate is silent as to the fact? We are cited to no authority, nor have we, after diligent search, found any to support the proposition contended for, which, upon careful reconsideration, we think is hypertechnical. We are of the opinion that so much of the form of acknowledgment by a husband and wife, as provides for certifying the marital relation, is merely directory; and the omission thereof from the certificate does not vitiate the deed of a married woman, in which her husband has actually joined. Although not directly in point the case of *Shumate* v. *Shumate,* 78 W. Va. 576, 90 S. E. 824, is apropos. We there held that a writing purporting to be the deed of a married woman, though not acknowledged in the form required by the statute for the acknowledgment of a married woman, living separate and apart from her husband, was nevertheless a binding contract on her to convey, it being proven that she was in fact at the time living separate and apart from her husband. If it was proper to show the fact that Mrs. Shumate was living separate and apart from her husband by evidence dehors the writing in order to give it some effect, why is it not equally proper in this instance to prove the relationship between Mary J. Price and James A. Price in order to give her deed the effect which they both evidently intended it should have?

The conveyance to "Ethel Price and the heirs of A. O. and Ethel Price," A. O. Price and Ethel Price being husband and wife, vested in Ethel Price an equitable estate in tail, which by the statute, Sec. 9, Ch. 71, was converted into a fee simple. The word *heirs* in this instance is used in its technical sense. *Irvin* v. *Stover,* 67 W. Va. 356; and *Tomlinson* v. *Nickell,* 24 W. Va. 148.

A. O. Price died leaving Ethel Price a widow. She afterwards married one P. H. Odell. During her widowhood, to-wit, in November, 1906, she leased 26 acres, a part of the

31 acres aforesaid, to the United Fuel Gas Company for oil and gas purposes. On November 28, 1911, Mary J. Price and James A. Price, her husband and trustee, made a deed confirming the oil and gas lease made by Ethel Price on the 26 acres of land, and conveying all their right, title and interest in said 26 acres to A. E. Price, trustee for Elsie Price who was the only child and sole heir at law of Ethel Price, then deceased.

After the death of Ethel Price's husband, A. O. Price, and after she had executed the oil and gas lease above mentioned, she married P. H. Odell, who survived her. Claiming a life estate in the said 26 acres by the curtesy, he conveyed it to H. L. Wehrle, plaintiff in the original suit, by deed 8th April, 1912, whereupon said Wehrle brought suit against Elsie Price and A. E. Price, as her guardian and also as her trustee, and also against the United Fuel Gas Company and the Ohio Fuel Oil Company. A compromise decree was therein entered, securing to Elsie Price the principal sum derived from the oil royalty from said lease, and providing for the payment to her of a part of the principal sum, not to exceed $200 a year, after she became sixteen years of age, for the purpose of her education. The decree further provided for the lending of the money derived from the sale of royalty oil at 6% interest, and the payment to said Wehrle of a sum annually, equal to 4% on the principal. This decree was entered as a compromise decree by consent of all parties, A. E. Price, acting as trustee, guardian and guardian ad litem for the infant Elsie Price, consenting for her. The court also expressly approved the compromise. This is the decree which Elsie Price attacks and seeks to have reviewed by her bill of review. Having already determined that the deed of Mary J. Price and James A. Price, her husband and trustee, passed complete title to Ethel Price, it follows that Elsie Price acquired whatever interest she had in the land by inheritance from her mother, Ethel Odell, and not by the deed made directly to her in the year 1911 by Mary J. Price and James A. Price her husband and trustee. But she took subject to the oil and gas lease which her mother had executed in 1906. This lease, without regard to the time of its

operation, was valid and binding on the heir. Being fully executed by Ethel Price at a time when she was *sui juris*, her surviving husband became entitled to his curtesy in the royalties arising therefrom during his life. *Koen* v. *Bartlett*, 41 W. Va. 559; and *Alderson's Admr.* v. *Alderson et al.*, 46 W. Va. 242. The decree complained of is clearly not prejudicial to the infant Elsie Price and she can not complain. It is, therefore, unnecessary to determine whether or not she would have been bound by the compromise decree in any event. We hold that the demurrers are sufficient and should have been sustained, and will remand the cause for further proceedings.

*Reversed and remanded.*

POFFENBARGER, JUDGE, *(dissenting):*

I am unable to concur in this decision. No authority justifies abrogation of the statutory requirements pertaining to conveyances by married women, by holding them to be directory or otherwise. It is not to be assumed that, because the legislature has greatly relaxed the rigid law of this subject, it intended further relaxation. Nor is it the province of the courts to extend the policy of relaxation and simplicity, adopted by the legislature, in such manner and to such extent as wholly to dispense with anything the legislature has seen fit to require as a matter of substance. Sec. 3, ch. 73, Code, prescribes a form of acknowledgment for single persons, and sec. 4 of the same chapter, for husband and wife. The latter form prescribes a recital of the relation between them, saying the certificate shall be in form or effect as therein set out. In all other respects, the two forms are the same. If this recital is not matter of substance, the second form is useless, and prescription thereof by the legislature was a vain and idle act. If it is immaterial, mere formality, and may be ignored, the first form may always be used and the relation proved by extrinsic evidence. That it is matter of substance necessarily results from the enactment of the two forms, one omitting it and the other adopting it. Few instances can be found in legislation, in which the purpose to make a phrase material and substantive is more clearly in-

dicated. Upon what other theory can the use of the two forms be explained? Was the second prescribed for mere convenience of the parties, the certifying officer or the public? Such is not the import of the legislative terms. They say, when a husband and wife have signed a writing purporting to convey real estate, they may acknowledge the same together, and, if they do, the certificate of their acknowledgment shall be in form or effect as prescribed. They are literally mandatory. The mandatory form is strengthened and emphasized by the phrase reciting the relation. It is the sole addition to the preceding form, prescribed for acknowledgments by single persons. To make the form mandatory, it was unnecessary to employ a negative, or to say the acknowledgment should be certified in that form and not otherwise. *Morris* v. *Board of Canvassers*, 49 W. Va., 554, 569; *Mears* v. *Dexter*, 88 Va., 828. If the thing directed to be done is of the essence of the thing required, the statute giving the direction is mandatory. The thing directed here is not a mere part of some larger thing required. It is the only thing required in the second form. Omission thereof is omission of all that is really required by sec. 4 of the chapter.

These words in the statute must be allowed some effect. "It is not to be presumed that the legislature intended any part of the statute to be without meaning." *Bank* v. *County Court*, 36 W. Va. 341; *State* v. *Harden*, 62 W. Va. 313, 315, 339; Lewis' Suth. Stat. Con. sec. 497. The form of the legislative expression is not controlling. The intent governs. A mere recital is as efficacious as a positive and formal affirmation or direction, if, taken in connection with its context and subject matter, it manifests legislative purpose. *Ches. & Pot. Tel. Co.* v. *Manning*, 186 U. S. 238; *Stanley* v. *Colt*, 72 U. S. 119; *Georgia etc. Co.* v. *Smith*, 128 U. S. 174; *Ches. & O. Ry. Co.* v. *Pack*, 6 W. Va. 397; *Cecil* v. *Clark*, 44 W. Va. 659. But this is not a recital. The direction is to certify certain facts and the relation of husband and wife is one of them, notwithstanding the adjective use and form of the phrase in question.

The expediency, utility or necessity of the requirement was matter for legislative, not-judicial, discretion. Authority

need not be cited for the proposition that courts cannot legally cut out or ignore legislative terms or requirements merely because they do not see any good reason for their insertion, or because they can see something else would have operated just as well or better than the provision adopted.

Deeming the decision in *Shumate* v. *Shumate,* unsustained by the law, I did not concur in it. It is in direct conflict with *Bennett* v. *Pierce,* 45 W. Va. 654. But, if sound, it is no authority for the view here adopted by my associates. The parties to the instrument upheld in it were living separate and apart. These parties were not.

In *Morgan* v. *Snodgrass,* 49 W. Va. 387, 395, Judge BRANNON suggested necessity of identification of the parties, or recital of the relation, which is the same thing, by the certificate, and cited *Merritt* v. *Yates,* 71 Ill. 636, expressly so holding. The certificate disapproved in the cited case was made under a statute requiring a separate examination, but that is immaterial. We have dispensed with such examination, but not with the requirement of a certificate of the relation of the parties. Whether we should do so or not, is a question for the legislature.