# CHARLESTON.

PHOEBE Z. DUNCAN *v.* W. M. DUNCAN *et als.*

## (No. 5918)

Submitted November 29, 1927. Decided December 6, 1927.

1. SPECIFIC PERFORMANCE—*Specific Performance of Contract Founded in Fraud, Mistake, or Undue Advantages, or Where Enforcement Would be Unconscionable, Will Not be Granted; Where Consideration is Grossly Inadequate, Specific Execution of Contract Will Not be Granted.*

   Equity will not exercise its discretionary authority to decree specific execution of a contract founded in fraud, mistake, or undue advantages, or where it would be unconscionable to enforce it—as where the consideration was grossly inadequate. (p. 603).

   (Specific Performance, 36 Cyc. pp. 551, 612.)

2. DEEDS—*Evidence of Fraud and Inadequacy of Consideration Held to Support Cancellation of Deed.*

   A case where a decree cancelling a purported deed as a cloud on title to real estate is warranted by the evidence. (p. 603).

   (Deeds, 18 C. J. § 552.)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of Syllabi.)

Appeal from Circuit Court, Putnam County.

Suit by Phoebe Z. Duncan against W. M. Duncan and others. From a decree for plaintiff, defendants appeal.

*Affirmed.*

*Beller, Blagg, Musgrave & Blessing* and *Beverley Broun,* for appellants.

*A. J. Barnhart,* for appellee.

WOODS, JUDGE:

This is a suit to cancel two certain deeds as clouds upon plaintiff's title. From a decree granting the relief prayed for, the defendants appeal.

Plaintiff is the widow of J. W. Duncan, deceased, who died on or about the 30th day of May, 1925, at an advanced age and after a lingering illness. She was seventy-seven years of age at the time of her husband's death. The defendants are the children of the deceased by a former wife. After the marriage of plaintiff and J. W. Duncan, in 1902, the two purchased two or three tracts of land in Putnam county, the titles to which were taken in the name of plaintiff. J. W. Duncan had been in failing health for several years prior to his death and was waited upon and nursed by plaintiff. Ten days prior to J. W. Duncan's death, the defendants called the plaintiff from the bedside of her husband, and had her to sign, in their presence, two writings purporting to be deeds to them for the two pieces of property then held in her own name. J. M. Duncan, having theretofore represented himself to plaintiff as the lawfully appointed Committee for his father, signed the latter's name by himself as such Committee. The notary who drafted the purported deeds, according to his testimony, inserted a clause in each writing reserving the property therein to the parties of the first part during their life-time. On the day of the funeral the several defendants began inquiring about certain papers and notes belonging, as they claimed, to their father, and threatened to have plaintiff and others arrested if she did not reveal their whereabouts. Shortly after, to-wit, on July 24th, the plaintiff had summons issued, and later filed her bill praying that the deeds purporting to convey her property to defendants be cancelled, set aside and held for naught as creating a cloud upon her title to the same. The bill alleges among other things that the plaintiff was sick and greatly enfeebled, both in mind and body, at the time of signing, due to the fact of her husband's serious illness, and by reason thereof, easily susceptible to the influences, arts and persuasions, of others; that J. M. Duncan held himself out as legally appointed Committee for her husband, and that she was told by him immediately prior

thereto that she had to execute the deeds, and that she believed it was necessary; that the property was worth $2,500.00, and that she never received any consideration for the same, not even the $1.00 consideration mentioned in each writing.

The defendants answered, denying any coercion on their part, and stating that at the time the deeds were signed plaintiff well understood the legal consequences thereof; that they were to furnish her a reasonable support and maintenance during the remainder of her natural life as a consideration. They close with a prayer that specific performance be required of the plaintiff—that she be required to make them a good and apt deed for the property so attempted to be conveyed by the two several writings.

The appellants evidently rest their case on the authority given a married woman to sell and convey property without her husband joining in the deed under chapter 73, section 6, Code, where she is living separate and apart from her husband, or her husband be *non compos mentis*. They admit that the acknowledgment of the wife to the deed did not state the fact to be that she was living separate and apart from her said husband, or that he was *non compos mentis*. In order to give *prima facie* validity to a deed these facts must be stated as having been shown to the satisfaction of the officer taking the acknowledgment. The appellants rely upon the proof in this case as establishing the fact that the husband was *non compos mentis* at the time the writings in question were made. They assert that a deed void for want of formality may nevertheless be good as a contract and pass the equitable title. The case of *Shumate* v. *Shumate*, 78 W. Va. 576, is relied on to sustain this proposition. There it was held that an instrument purporting to be a deed, granting the separate estate of a married woman living apart from her husband, though upon a consideration deemed valuable in law, and signed, sealed, and acknowledged by her, the husband not joining therein, is void as a conveyance unless the acknowledgment appended thereto contained the recital required by section 6, chapter 73, Code; but such instrument is valid as a contract of sale enforceable against her and her heirs. In support of this the following cases are cited: *Atkinson* v.

*Miller,* 34 W. Va. 115; *Boggess* v. *Scott,* 48 W. Va. 316. In
the later case of *Wehrle* v. *Price,* 80 W. Va. 669, the Court
said: "Although not directly in point, the case of *Shumate*
v. *Shumate,* 78 W. Va. 576, is apropos. We there held that
a writing purporting to be the deed of a married woman,
though not acknowledged in the form required by the statute
for the acknowledgment of a married woman, living separate
and apart from her husband, was nevertheless a binding con-
tract on her to convey; it being proved that she was in fact
at the time living separate and apart from her husband.
If it was proper to show the fact that Mrs. Shumate was living
separate and apart from her husband by evidence *dehors* the
writing in order to give it some effect, why is it not equally
proper in this instance to prove the relationship between
Mary J. Price and James A. Price in order to give her deed
the effect which they both evidently intended it should have?"
While the above applies to a case where the wife is living
separate and apart from her husband, it is apparent that it is
equally applicable to the same here where it is claimed that
the husband was *non compos mentis.* The lower court evi-
dently took this view of the situation. So, if good for any
purpose, the writings in question as to the surviving wife
may only be treated as contracts to convey real estate.

In order to have specific performance of the contract, the
burden rests upon the defendants not only to prove the con-
tract, but that the same is fair, just and equitable. *Crotty*
v. *Effler,* 60 W. Va. 258; *Heflin* v. *Heflin,* 63 W. Va. 29;
*Hartigan* v. *Hartigan,* 58 W. Va. 610. We find from the
record that the plaintiff, a sick and infirm woman, seventy-
seven years of age, was called from the bed-side of her dying
husband into the kitchen, where almost all the defendants
were congregated, to sign the papers now sought to be specifi-
cally enforced by them. The testimony of the plaintiff is
illuminating on the conditions under which she executed them.
"Q. State just what you said about signing them? A. Well,
they said I would have to sign the deeds. Q. Did you or did
you not do so? A. Yes, sir, but I wasn't signing them
willingly at all. I couldn't have done that because I want
my place. Q. Why did you sign the deeds? A. I don't

hardly know; because I was afraid.   Q. What were you afraid of?   A. Why, there was so many of them there, I didn't know what might happen, being by myself, you know.''   The papers were drawn up by a notary at the request of one of the defendants.   It is admitted that the $1.00 considerations in the instruments never passed to the plaintiff.   But, in order to make up the failure to show any consideration on the face of the purported deeds, the defendants seek to show by oral evidence that it was generally understood between plaintiff and them that she was to convey the property in consideration of their taking care of her the rest of her life and putting ''her away nice''.   However, all admit that nothing was said about such consideration at the time of the signing of the papers.   No reference to such consideration is set out in the purported deeds.   If the inadequacy be so great as to prove fraud, a conveyance will not be compelled.   It is laid down in Tucker's Commentaries, Vol. 2, p. 426, as a rule that ''If the contract be executory and the seller refused, on account of the hardness of the bargain, to carry it into execution, if the price be very unreasonable, a court of equity will not force him to do so on the application of his adversaries, both because the decreeing of the specific execution of contract is a matter of discretion in the court, and because in a hard case, unless the party who seeks to compel performance has in all things fulfilled the contract to the letter on his part, which rarely happens, he has no right to expect a rigorous enforcement of it in his favor.''   Therefore, if the contract is not equal, it must at least not be grossly unequal; for, though equity may not for inequality of price set aside a contract, yet the same inequality might evidence a refusal to decree performance.   Sugden on Vendors, p. 191.   It is unnecessary to multiply citations.   It is clear from those referred to that the writings in question are not such contracts as equity ought to enforce.   They are not only without consideration, but they were not fairly made.

The circuit court has found that the defendants have not shown themselves entitled to affirmative relief, and have cancelled the deeds as clouds on plaintiff's title.   We must affirm

that decree. *Wegmann* v. *Clark*, 94 W. Va. 364; *McBee* v. *Deusenberry*, 99 W. Va. 176.

*Affirmed.*