THOMAS W. HANLEY *et al. v.* R. W. RICHARDS *et al.*

(CC 516)

Submitted February 5, 1935. Decided February 26, 1935.

*Thomas B. Davis* and *H. R. Taylor*, for plaintiffs.
*W. J. Brennan*, for defendant Mary E. Toothman.
*S. A. Powell, R. S. Blair* and *Dewey S. Wass*, for defendants R. W. Richards and others.

HATCHER, JUDGE:

This certification involves the validity of an oil and gas lease, made by Mrs. Mary E. Toothman, a married woman living separate from her husband, of her own real estate, to R. W. Richards. The husband of Mrs. Toothman did not join in the lease, and their separation was not recited therein or in the acknowledgment thereto. The circuit court ruled that the lease was invalid.

The lease was dated September 22, 1930, and recorded April 3, 1933. It was for a period of four years and for as long thereafter as oil and gas should be produced. It provided for the payment of delay rentals to commence December 1, 1930. Mrs. Toothman wrote to Richards on November 13, 1930, that it had been three years since she had seen her husband; that she did not know where he was; and that there was no use to bother about his signing the lease because in business affairs he permitted her to do as she pleased. Following this letter Richards paid to Mrs. Toothman her share of the delay rentals, quarterly, for the years 1931-2 and 3. In the meantime, on July 17, 1931, she conveyed the leased property to a *non compos* daughter by a deed recorded August 24, 1931. The consideration for this conveyance was love and affection. On November 25, 1933, Mrs. Toothman, in her own right and as guardian of her *non compos* daughter, purported to lease the oil and gas interests in controversy to plaintiffs Hanley and Stillings. Those lessees sought in this suit to enjoin Richards and associates from operating under the lease of September 22, 1930. Richards and associates set up their claim in an answer (seeking affirmative relief) to which a demurrer was sustained by the circuit court. The sufficiency of that answer is the subject of this certification.

Code 1923, chapter 73, section 6, directs that a "deed or other writing agreeing to sell and convey" real estate which

is the sole property of a married woman living apart from her husband, shall recite both the fact of sole ownership and the fact of marital separation in case he does not join in the conveyance; that such facts shall be proved to the satisfaction of the officer taking the woman's acknowledgment; that the facts shall be stated in the certificate thereof; and that the certificate shall be *prima facie* evidence of the facts. Counsel for plaintiffs take the position that failure of the Richards lease to comply with the provisions of chapter 73, section 6, renders the lease void, citing *Bennett* v. *Pierce,* 45 W. Va. 654, 31 S. E. 972, and allied cases, which so hold.

Code 1923, chapter 66, section 3, provides that a married woman may convey her own real property, etc., "in the same manner, and with like effect as if she were unmarried." Counsel for Richards contend that chapter 66, section 3, and chapter 73, section 6, conflict, and that the former should be given precedence over the latter. It is a settled rule of statutory construction that statutes relating to the same subject matter must be considered together. *State* v. *Hoult,* 113 W. Va. 587, 169 S. E. 241. This rule has been followed in the construction of these two statutes in so many cases and for so long a time, that we regard the contention foreclosed.

Counsel for Richards then turned to *Shumate* v. *Shumate,* 78 W. Va. 576, 90 S. E. 824. That case was decided in 1916. At that time Code, chapter 73, section 6, related *only to deeds.* See Hogg's Annotated Code 1913. The *Shumate* case involved a deed of the separate estate of a married woman living apart from her husband, which did not comply with the provisions of chapter 73, section 6. The court held that although the *Shumate* deed was void under the statute as an actual conveyance, the instrument would nevertheless be sustained *as an agreement to convey.* Three years after the *Shumate* decision, however, the Legislature amended chapter 73, section 6, to include not only deeds *but also* "other writings agreeing to sell and convey." See Acts 1919, chapter 65. Thus, by requiring the same formalities in writings agreeing to sell and convey as in a deed itself, the Act of 1919 terminated the effect of the *Shumate* decision whatever may have been its merits. A lease of land for the purpose of extracting oil and

gas "is in effect a grant of a part of the corpus of the land." *Haskell* v. *Sutton,* 53 W. Va. 206, 44 S. E. 533. Therefore, we must regard the Richards lease as we would a deed, and hold it to be initially void under *Bennett* v. *Pierce, supra,* for failure to comply with the statute.

The Code of 1931, 48-3-3, removed all the restraints upon alienation theretofore imposed by law on a married woman. Mrs. Toothman accepted delay rentals after the termination of her legal disabilities. So counsel for Richards contend that while the acceptance of the lease money might not have affected her status whatsoever while she was under disability, the acceptance of money after her disability had terminated, and when she was *sui juris,* estops her now from asserting the invalidity of the lease. It seems to be settled that married women may be estopped by their conduct after the removal of all disability. "This is plainly so," says Pomeroy (in his work on Eq. Juris., [4th Ed.] sec. 814) "in states where legislation has freed their property from all interest or control of their husbands, and has clothed them with partial or complete capacity to deal with it as though they were single." Accord: *Tufts* v. *Copen,* 37 W. Va. 623, 629, 16 S. E. 793; Bishop, Law of Married Women, section 493; *Bodine* v. *Killeen,* 53 N. Y. 93; *Jourdan* v. *Dean,* 175 Pa. 599, 611, 34 A. 958, 964; *Mills* v. *Tabor,* 182 N. C. 722, 109 S. E. 850; *Morrison* v. *Balzer,* 35 Tex. Civ. App. 247, 80 S. W. 248; *Longino* v. *Smith,* 158 Ark. 162, 249 S. W. 557; *Hollander* v. *Abrams,* 99 N. J. Eq. 254, 132 A. 224, and the host of authorities therein cited. The *Hollander* opinion after reciting the emancipation of womanhood from the thralldom of statutory and common law contains the following terse statement:

"There is now, therefore, no real reason for any different application of the rule of estoppel to a married woman than to a *feme sole* or to the male citizen. It is neither right nor just that, having come into the possession of all these rights and privileges (of one *sui juris*), she should cling to them with one hand while retaining with the other some part of those ancient common law disabilities as a cloak for her fraud. Modern woman, generally speaking, needs no protection at law which is not afforded to man."

The ruling of the New Jersey court is simply the application of the venerable maxim *cessante ratione legis cessat ipsa lex* (with the reason of law ceasing, the law itself ceases), so often applied in this Court. See *Lusk* v. *Lusk,* 113 W. Va. 17, 166 S. E. 538. Common honesty as well as law forbids that one *sui juris* should receive and retain the price of a thing sold and yet repudiate the sale. "Accordingly it has been ruled uniformly that if one receive the purchase money of land sold, he affirms the sale, and he cannot claim against it whether it was void or only voidable." *Maple* v. *Kussart,* 53 Pa. 348, 352, 91 Am. Dec. 214. Had Mrs. Toothman been a single woman her acceptance of the rentals herein would assuredly have estopped her from questioning the validity of the lease. We are of opinion that after January 1, 1931, she became subject to the same rule as a single woman.

Love and affection—the consideration in the deed of Mrs. Toothman to the *non compos* daughter—"while sufficient as a consideration between the parties, are insufficient to constitute one a purchaser for value." 66 C. J., subject Vendor and Purchaser, sec. 925. At the time plaintiffs secured their lease, Richards and associates—according to the allegation of their answer—were in actual possession of the leased land. If so, such possession as well as the public record was notice to plaintiffs of the Richards claim and they took subject thereto.

We are therefore of opinion that under the allegations of the Richards answer, Mrs. Toothman and those claiming under her are estopped to deny the validity of the Richards lease, and that it was error to sustain the demurrer to the answer.

The ruling of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*