B. H. HOPKINS *v.* RUSSELL E. BRYANT

(No. 8919)

Submitted October 17, 1939. Decided December 12, 1939.

*Hutchinson, Crouse & Trail,* for appellant.
*J. W. Maxwell,* for appellee.

KENNA, JUDGE:

This suit involves the enforcement of a restrictive covenant.

B. H. Hopkins and R. E. Bryant conducted an automobile body repair business at Beckley for a number of years, first as a partnership and then as a corporation, of which they were sole owners. Hopkins was president of the corporation, and by force of circumstances, also its chief executive. A resolution dissolving the corporation was adopted February 5, 1937, and on the same day, Bryant sold all his interest in the corporate property to Hopkins. The contract of sale contained the covenant that the seller would not engage directly or indirectly in business like that of the corporation, for five years, within twenty-five miles of Beckley. Hopkins continued the same business; Bryant worked for him until about March 1, 1938, and then went to work for a competitor at Beckley. Hopkins brought suit on the above covenant and secured an injunction temporarily restraining Bryant from violating it. Evidence was taken showing that Hopkins in October, 1936, had renewed, in his own name, the lease on the building where the corporate business was conducted. The injunction was dissolved and the bill dismissed, on the ground that Hopkins fraudulently obtained and used the lease to oust Bryant from the business.

Hopkins testified that for several years before 1937, Bryant drank entirely too much liquor, and would not work or cooperate in running the business, though receiving an equal share of the profits; that the witness many times, unsuccessfully, importuned Bryant to mend his ways, but he said "that he would do as he damn pleased"; that because of this attitude, the witness also unsuccessfully sought employment elsewhere; that the lease was taken personally by the witness to use as "a little hammer", or as "a hand" over Bryant "To try to get him to straighten up"; that Bryant was informed of the lease and its purpose immediately after it was secured; that he showed no improvement, and in January,

1937, a proposition was submitted to him by the witness to buy or sell the business, including the lease; that discussions followed in which it was agreed that for five years the seller "wasn't to go in business" within a radius of twenty-five miles from Beckley; that at one time, Bryant agreed to buy, and two papers were shown in evidence, one prepared and one executed, under the expectation, but later, Bryant changed his mind, and thereupon the witness purchased on the same terms he had offered to sell; and that the business of the corporation came from Raleigh and the surrounding counties. Hopkins' testimony is corroborated in most particulars by the bookkeeper for the corporation, and in some by his brother. The only parts of this testimony denied by Bryant are that Hopkins complained about his drinking, that he ever agreed to purchase the corporation property, and that relating to the lease. He testified that he was not informed of the lease until about January 1, 1937, and while admitting the buy-or-sell offer of Hopkins, said the lease was not included in the offer; that after they had discussed the offer a week or two, Hopkins, in the language of the witness, "finally told me that if I didn't sell out he would set me out in the street in about thirty days"; and that because Hopkins had the lease in his name, the witness sold, thinking that he could be so ousted. Hopkins denied the threat, but admitted that when he procured the lease, he intended to hold it for himself and "to get rid of" Bryant, unless he quit drinking, and that the witness so informed Bryant.

Counsel for Hopkins contend that no particular weight should be given to the holding of the circuit court for the reason that the chancellor who decided the cause was not the chancellor before whom the evidence was taken. We see no reason to estimate this holding differently from that of a chancellor on depositions taken before a notary or commissioner. In such cases it is firmly established that the deciding chancellor is the primary trier of the facts and of conflicting evidence thereon, and that his finding will not be disturbed unless plainly wrong. The

statements of Hopkins, alone, would support the finding here. While he, by law, held the lease for the benefit of the corporation, both he and Bryant had the impression that Hopkins held the lease exclusively for himself. He admittedly secured it *as a hammer* to break his corporate connection with Bryant, and informed him of that purpose. Because of all which, Bryant was patently at a disadvantage during their negotiations. No matter how well founded may have been Hopkins' exasperation at Bryant's conduct, Hopkins, as the chief executive of the corporation, occupied a fiduciary relation to Bryant; and that relation forbade the use of the lease by Hopkins to further his own interests. *Young* v. *Columbia Oil Co.*, 110 W. Va. 364, 370, 158 S. E. 678; *McCourt* v. *Singers-Bigger*, 145 Fed. 103, 7 Ann. Cas. 287; *Bank* v. *Free*, 205 Mich. 52, 171 N. W. 464; Perry, Trusts (7th Ed.), sec. 207; 13 Am. Juris., Corporations, sec. 998; Fletcher, Cyc. Corporations, sec. 2281. The rule forbidding fiduciaries "from dealing in their own behalf with respect to matters involved in the trust * * * extends to every variety of circumstances * * * and operates irrespectively of the good faith or bad faith of such dealing." Pomeroy, Eq. Juris. (4th Ed.), sec. 1077.

Counsel contend that Bryant cannot defend on the ground of duress in the procurement of the contract, without offering to rescind it entirely. Rescission, in any respect, is not sought by either party, and the authorities cited in support of this contention do not support it. We do not overlook that Restatement, Contracts, section 487, 1, states that a provision prohibiting further competitive business cannot be avoided, without avoiding *what of the contract remains unperformed.* Without admitting that the statement applies at all to a *defendant* in a suit for specific performance, we hold that it does not apply here because nothing of the entire contract is unperformed but the covenant in question. A party to a contract does not have an absolute right to its specific performance; applications for that relief are controlled by well established principles of equity. Pomeroy, Spec.

Perf. (3d Ed.), sections 35, 36; *Humbard's Heirs* v. *Humbard,* 3 Head. 100, 40 Tenn. 100; Annotation 65 A. L. R. 22, *et seq.* Where a contract is tainted by duress, as here, equity will not decree its performance. *Duncan* v. *Duncan,* 104 W. Va. 600, 603, 140 S. E. 689; Williston, Contracts (Rev. Ed.), sec. 1425; 58 C. J., Spec. Perf., sec. 127; Pomeroy, *idem,* sec. 175. In a suit for specific performance, just as in other causes in equity, the hands of the plaintiff must be clean, and the defendant may resist merely by showing them unclean. *Cathcart* v. *Robinson,* 5 Peters 264, 8 L. Ed. 120; *Haffner* v. *Dobrinski,* 215 U. S. 446, 450, 30 S. Ct. 172, 54 L. Ed. 277. We find no authority advocating that a defendant in a suit for specific performance must be put on terms, as a prerequisite to such resistance. On the contrary, the rule is well settled, especially when a confidential relation existed between the parties, "that in a suit for specific performance, it must be affirmatively shown that the contract is fair and just * * *." *Agard* v. *Valencia,* 39 Cal. 292, 302. Accord: *Pattberg* v. *Gott,* 102 N. J. Eq. 371, 140 A. 795; *Schlussel* v. *Hayes,* 89 Ore. 463, 174 P. 722, 724; *Bright* v. *Briscoe,* (Tex.), 202 S. W. 183; *Hodgson* v. *Lamberson,* 233 Mich. 425, 207 N. W. 16; *Hartigan* v. *Hartigan,* 58 W. Va. 610, 52 S. E. 720.

The decree is affirmed.

*Affirmed.*