# CHARLESTON

HARTIGAN *v.* HARTIGAN.

Submitted June 12, 1905.   Decided  January 23, 1906.

1. HUSBAND AND WIFE—*Contract of Separation—Cancellation.*
   A contract, between a husband and wife in an agreement for separation and the conveyance of the wife's property to the husband, will be cancelled and annulled at the suit of the wife, unless it clearly appears to be fair, just, equitable and wholly free from exception.  (p. 616.)

2. HUSBAND AND WIFE—*Contract of Separation—Cancellation.*
   In a suit by a wife for divorce from bed and board and the cancellation of a contract between herself and husband for a perpetual separation and an agreement on her part to convey forthwith in fee to the husband her real estate of the value of $10,000 or $12,000, in consideration that the wife have full, absolute and complete custody and control of their five children, the husband to have, use and occupy certain rooms in the house so conveyed to him; the wife and children to have, use and occupy the residue of the house, and the wife to provide food and clothing for said children and pay all necessary expenses for supporting them in their said home, including the expenses of their education in the local schools, the husband to pay the wife $50 per month for the purpose of such support and expenses, said "agreement to remain in full force and effect until the youngest child shall reach her majority." *Held:* Such agreement is unfair, unjust and inequitable and should be cancelled.  (p. 617.)

(Cox, JUDGE, Absent.)

Appeal from Circuit Court, Monongalia County.

Bill by Mary V. Hartigan against James W. Hartigan. Decree for plaintiff, and defendant appeals.

*Affirmed.*

HENRY M. RUSSELL and GOODWIN & REAY, for appellant.

W. S. MEREDITH and LAZZELLE & STEWART, for appellee.

McWHORTER, PRESIDENT:

At the January rules, 1902, Mary V. Hartigan filed her bill in equity in the clerk's office of the circuit court of Monongalia county against James W. Hartigan, her husband, praying for a divorce *a mensa et thoro*, for alimony, and the custody of their five children; that the cause remain on the docket that she might in due time according to law have a divorce *a vinculo matrimonii*, and for the further purpose of setting aside and annulling a contract and agreement between herself and her husband, which contract is as follows:

"This agreement made this 11th day of October, 1899, by and between James W. Hartigan and Mary V. Hartigan, his wife, Witnesseth: That whereas said parties have agreed to separate from bed & board and otherwise dissolve their *martial* relations as hereinafter set forth, now, therefore, they agree to make disposition of their property, &c., & adjust their future relations toward each other & their children as follows:

"1. The said Mary V. Hartigan agrees to convey forthwith, by deed in fee, to J. W. Hartigan the house and lot now occupied by them as their residence, on Spruce Street in the town of Morgantown, West Virginia.

"2. In consideration of which said conveyance the said J.W. Hartigan agrees & hereby grants, transfers & surrenders to said Mary V. Hartigan, the full, absolute & complete custody & control of their five children. The said J. W. Hartigan is not to interfere with, command, correct, or in any wise exercise any authority over or direct the discipline or education of any of said children except by permission & at the instance of said Mary V. Hartigan, but shall have the privilege of seeing them as often as he wishes & said chil-

dren shall be free to visit him in his quarters at said home, socially when they so desire.

"3.  Said J. W. Hartigan shall have the occupancy & control of the two rooms in said residence heretofore used by him as a bed room & study on the second floor, & of the back parlor as an office or other use, on the first floor, with the use of the bath room, & of the attic for storage.  Said Mary V. Hartigan shall have the exclusive occupancy & control of the remaining rooms of said residence for her own use & that of her children, & neither party shall unnecessarily invade or seek to use or control that part of said house hereby assigned to the other.  And said children shall be kept in said house as their house, & not be removed therefrom to any other quarters or place whatsoever except by the mutual consent and permission of the parties to this agreement previously obtained— provided only that this shall not be construed to prevent said children going away temporarily on brief visits in company with their mother or by her consent.

"4.  Said J. W. Hartigan further agrees to pay over to said Mary V. Hartigan, or place to her credit in a bank of Morgantown, each month beginning with this month of October, 1899, the sum of fifty dollars, out of which the said Mary V. Hartigan shall provide food and clothing for said children & pay all necessary *expences* for supporting them in their said home, including the *expences* of their education in the local schools.  And said Mary V. Hartigan shall not contract or incur any debt or debts on said account of any kind or character whatsoever.

"5.  The said J. W. Hartigan shall further provide decent & suitable household & kitchen furniture for said entire house, keep said house in good repair, & pay all other *expences*, including taxes, water & *gass* bills, for its maintenance as a residence.

"6.  Said J. W. Hartigan shall not eat at the common table of said family, but shall make separate provision for his own boarding at a hotel or elsewhere.

"7.  This agreement shall remain in full force & effect until the youngest child shall reach her majority.

"Given under our hands this 11th day of October, 1899.

"MARY V. HARTIGAN,
"J. W. HARTIGAN."

This agreement was duly acknowledged by the said J. W. Hartigan on the 5th day of September, 1901, before the clerk of the county court of Monongalia county, and on the same day was proved before the said clerk as to the said Mary V. Hartigan by the oaths of W. P. Willey and E. H. Coombs, and admitted to record in the office of the said clerk on said 5th day of September, 1901. Plaintiff based her grounds for divorce and alimony on cruel and inhuman treatment of her, and abandonment and desertion by the defendant. The defendant answered the bill denying all its material allegations, to which the plaintiff replied generally. The depositions taken by the plaintiff and the defendant are very voluminous, constituting over nine hundred pages of the record in this cause.

The cause was brought on to be heard on the 23d day of June, 1902, when the court decreed that plaintiff be divorced from bed and board from her husband, said defendant, and that they be perpetually separated; that plaintiff be thereafter perpetually and fully protected in her person from said defendant and in all her property and estate then owned by her except as thereinafter provided, and in all her property and estate thereafter acquired against any claim or demand of defendant and free from any marital right or claim of the husband; and a like provision for the protection of the defendant's property against plaintiff, except as thereinafter provided and in all property and estate thereafter acquired by him, against any claim or demand or estate of said plaintiff; and decreed that said contract of October 11th, 1899, be set aside, cancelled and annulled; and further decreed as follows:

"The Court, without now determining what interest, if any, the said defendant has in the real estate known as the hospital property, situate on Spruce Street in Morgantown, *Mononghalia* County, West Virginia, referred to in said contract dated October 11th, 1899, and which was conveyed to the said plaintiff by John Marshall Hagans and James W. Hartigan by deed bearing date on the 2nd day of April, 1897, a copy of which is filed with the bill in this cause, and expressly reserving all questions as to the interest of the defendant in said property until the future order of this Court, doth adjudge, order and decree that the said plaintiff shall

have and hold the exclusive use, possession and control of the said property together with the appurtenances and privileges thereunto belonging and all the rents, issues, and profits of the same to the same extent and as fully as she, the said plaintiff, would if sole owner thereof, and that the said property shall be taken, held and accepted by the said plaintiff in lieu of alimony, and the court doth reserve for future order of this Court the question of the interests of each of the said parties in the said property and also the question of further alimony to be granted the plaintiff as against the defendant. The Court doth further adjudge, order and decree that the said defendant may, at his election, continue in possession of the said hospital property for six months from the ris—of this court upon the condition, however, that he, the said defendant, pay to the said plaintiff the sum of Fifty Dollars per month for the use of said property. Said Fifty Dollars per month to be paid by the defendant to the plaintiff monthly in advance, and at the expiration of the said six months from the rising of this court, or at once, if the said defendant desires not to continue in possession thereof upon the terms and conditions of paying Fifty Dollars per month in advance to the said plaintiff, or if the defendant undertakes to remain in possession of the said property on said terms and conditions and at any time before the expiration of said six months, shall fail to pay to the said plaintiff the said Fifty Dollars per month in advance for any month, then in either event the plaintiff upon her motion may sue out of the Clerk's office of this Court a writ of possession for said property.

"The Court doth further adjudge, order and decree that the said plaintiff shall have the exclusive care, custody and control and shall maintain the infant female children of plaintiff and defendant, to-wit, Elizabeth Willey Hartigan, Mary Virginia Hartigan, and Sarah Hartigan, and the said plaintiff shall maintain, support and educate them free from any charge upon defendant further than that allowed the plaintiff by this order or by future order of the court.

"It appearing to the court that the said plaintiff is possessed of some other estate of her own in addition to her interest and estate in said hospital property and that she asks to be permitted to support and educate the two infant male

children of plaintiff and defendant, to-wit, John Marshall Hartigan and James William Hartigan, it is therefore adjudged, ordered and decreed that the said plaintiff may, if she so elect, at her own expense, undertake the support and education of the said two infant male children and for that purpose she may have the custody and control of them, but the court doth further adjudge, order and decree that if the said plaintiff decline to so undertake to support and educate the said two male children, or if she should undertake to do so and fail, either through disinclination on her part or from her inability to control them, then they shall be placed in the charge of and under the control of the defendant, and in the event that said male children are placed under the control of the defendant, he, the said defendant, shall be liable for their support and maintenance. The court doth reserve the right to make such order in the future as shall be deemed best for the control and maintenance of the said two male infant children of plaintiff and defendant.

"The Court doth further adjudge, order and decree that the plaintiff recover against the defendant her cost by her in this behalf expended."

From which decree the defendant appealed, and says that the court erred in granting the plaintiff the divorce from bed and board from defendant; and decreeing that the agreement, dated the 11th day of October, 1899, be set aside, cancelled and annulled; and in decreeing that the plaintiff should have and hold the exclusive use, possession and control of the property mentioned in the decree, together with the appurtenances and privileges thereto belonging, and the rents, issues and profits thereof; and in decreeing that the plaintiff should have the exclusive care, custody and control of the female children mentioned in the decree, and at her option should have the control of the two male children and the like option to support and educate them.

Since the submission of the cause to this Court the death of plaintiff has been suggested on the record. The testimony taken in this case is very conflicting; and as touching the allegations of cruelty the evidence is sufficient to warrant the circuit court in granting the divorce from bed and board. Counsel for defendant contends that it may fairly be said that the evidence for the plaintiff does not outweigh the evidence for the defendant and the burden of proof being upon

plaintiff she was not entitled to the decree of divorce, but the court having so found under the evidence, conflicting as it was, and this Court, not being able to see that the evidence preponderates in favor of defendant, will not disturb the decree on that point. It does not appear upon the face of the decree whether the decree was based upon the evidence of cruelty, or abandonment, but as the evidence fails to sustain the decree on the latter point, we assume that it was based upon the former ground of cruelty.

As to the cancelling and annulling of the contract of October 11th, 1899, this is a contract of separation made by a married woman with her husband not only to live separate and apart but by it they agree to separate from bed and board and otherwise dissolve their marital relations. "The said Mary V. Hartigan agrees to convey forthwith by deed in fee to J. W. Hartigan, the house and lot now occupied by them as their residence on Spruce Street in the Town of Morgantown, West Virginia."

The consideration for which conveyance of said property in the agreement on the part of said J. W. Hartigan to surrender to said Mary V. Hartigan the full, absolute and conplete custody and control of their five children; he to occupy certain rooms designated in the house and she and the children to have the exclusive occupancy and control of the remaining rooms; he to pay her $50.00 a month, out of which she should provide food and clothing for the children and pay all necessary expenses for supporting them, including the expense of their education in the local schools.

It is contended by the appellant that the agreement in its provisions "was fair and liberal towards the plaintiff." It is true plaintiff in her testimony says that she was consulted about the terms of the agreement and that she suggested the consideration, and that she entered into the agreement with the full knowledge of her marital rights, but denied that the consideration named in the agreement was adequate, and says she signed it "because I could not get anything else. My uncle tried to induce him to be generous." What is the consideration moving from defendant to plaintiff for all this property, which the record shows is worth from $10,000 to $12,000? The first consideration is the giving up of the control, custody and maintenance of the children to the

plaintiff, the defendant being relieved from all responsibility and the duty of providing and caring for the said children, which the law requires at his hands. The money consideration is $50.00 per month, which is an inadequate support for the wife and children, besides a considerable portion of the house is given over to defendant for his use and occupancy. It is very evident from the testimony in the case that the plaintiff at the time of the execution of said agreement had become almost desperate and therefore willing to execute any sort of an agreement to get entire control of her children. The property was hers, and she was entitled to the rents and profits thereof, and was entitled, at the hands of the defendant, to a support for herself and her children; and yet she entered into this contract whereby she took upon herself the burden of supporting herself and all the children for the sum of fifty dollars per month. And even that was to cease when the youngest child should arrive at the age of twenty-one years, at which time the plaintiff was to be turned "out upon the cold charities of the world;" at least upon her own resources, divested of all title or interest in her property, which she agreed to convey in fee to the defendant. This agreement to convey the property seems to be without any adequate consideration. It is claimed by counsel for appellant that he had an equity in the property by reason of the improvements he placed upon it. It is true that he placed the most of the improvements upon it, but the improvements were an absolute gift to the plaintiff by the defendant for herself and their children and her title to the property and the enjoyment thereof was complete. It is well settled that a contract of the character of the one here in question must be fair, equitable and just. In 4th Pom. Eq., section 1405, in treating of the essential elements and incidents of a contract which equity will enforce, the author says: "The elements which peculiarly affect the equitable character of the agreement and of the remedy are the following: The contract must be perfectly fair, equal, and just in its terms and in its circumstances. The contract and the situation of the parties must be such that the remedy of specific performance will not be harsh or oppressive." See also section 397, Hogg's Eq. Pr., where it is said: "It

must also be based upon a valuable consideration; * * * * and the contract must also be just and equitable and free from fraud and in harmony with equity and good conscience.''—And cases there cited.    And in 2d Beach on Mod. Eq. Jur., section 567:    ''The relief being discretionary, it follows, therefore, that, in the first place, the contract must, under all circumstances, be equitable and just. An agreement may be valid at law, and there may not be sufficient grounds for its cancellation in equity; and yet, upon a fair and just consideration of the attendant and collateral circumstances, the court will abstain from decreeing its performance.    Before granting such a decree the court must be satisfied not only of the existence of a valid contract, free from fraud and enforceable in law, but also of its fairness and of its harmony with equity and good conscience; and any fact showing that a contract is unfair, unjust or against good conscience will justify a court of equity in refusing to decree its specific performance.''

If these principles apply to agreements and contracts made between parties trading at arms length and in every respect competent to contract, how much more strongly would they apply in favor of the wife contracting with her husband. Can it be said of the contract in question here that the consideration was adequate, or that the contract was just, fair and equitable?

It is claimed by appellee that the contract was against public policy, and cites 1st Bish. on Mar. and Div., section 1261, *et seq.*, and cases there cited; and therefore not enforceable in equity; while it is claimed by counsel for appellant ''that the agreement was not an agreement for the separation of the husband and wife.    They had already separated and the agreement was entered into subsequently to the separation, and because it had already taken place.'' This is contrary to the position taken by the defendant in his answer, where he says:    ''In October in the year 1899, an agreement of separation was entered into between the plaintiff and the defendant, and from that time until the present they have not lived together as husband and wife.''    And further, ''Respondent has never in any way abandoned or deserted the plaintiff, or done anything which could properly be construed as abandonment or desertion.    On the contrary

any abandonment or desertion which has taken place, has been by the plaintiff herself, and without any reasonable cause or occasion for the same.    Respondent is advised and therefore alleges that the separation which took place upon and by reason of the execution of the said agreement, dated the 11th day of October, in the year 1899, could not properly, by reason of that instrument, be construed as abandonment or desertion, or as a proper ground for divorce."

Thus, it will be seen that defendant clearly understood the agreement to be an agreement of separation, and which separation took place at the time of the execution of said agreement.

In *Switzer* v. *Switzer*, 26 Grat., 574, Syl., it is held: "A contract between a husband and wife in an agreement for a separation, cannot be sustained in any case in which it does not clearly appear, that in the negotiation which preceded the agreement, as well as at the time of executing the same, the wife was in a position in which she could act and did act, not only with perfect freedom, but with a full knowledge and appreciation of all the circumstances of her situation, and of her individual and marital rights; and the contract in itself must be fair and just, wholly free from exception, and such as a court of equity might have imposed upon the parties in a case in which their persons and their property had properly fallen under its jurisdiction and control."

It will be observed here that the contract in itself must be fair and just, wholly free from exception and such as a court of equity might have imposed upon the parties in a case in which their persons and their property had properly fallen under its jurisdiction and control.    In case at bar the wife contracts to convey her property absolutely and in fee for a consideration wholly inadequate, if there can be said to be a valuable consideration at all; and while it appears from her own testimony that she had full knowledge and appreciation of all the circumstances of her situation and her marital rights, at the same time it appears that the circumstances were such as to produce in her an almost frenzied state of mind and to such an extent that she was ready to make any sacrifice of her property in order to get sole control and custody of her children, and because of these conditions she entered into this agreement, which if enforced would in a

few years deprive her of all the rights and benefits in and to her said property. Can it be thought for a moment that any court of equity, having jurisdiction of the persons and the property of these parties, could or would have imposed upon the plaintiff the terms and conditions in the contract of October 11th, 1899, and sought to be cancelled and annulled in this cause? The circuit court did not err in setting aside, cancelling and annulling the contract, the same being so clearly inequitable, unfair and unjust.

The assignments of error touching the custody and control of the children, it is deemed unnecessary to discuss; there is sufficient evidence in respect to this matter to support the decree at the time it was entered. New conditions have arisen since the decree, occasioned by the decease of plaintiff, which will probably make further action necessary on the part of the circuit court in relation thereto. For the reasons stated herein, the decree of the circuit court is affirmed.

*Affirmed.*