HUNTER SMITH *v.* NETTIE SMITH

(No. 9368)

Submitted February 9, 1943. Decided March 23, 1943.

J. W. *Maxwell* and *File, Scherer & File,* for appellant.
*Grover C. Trail* and *Ashworth & Sanders,* for appellee.

RILEY, PRESIDENT:

Hunter Smith brought suit in the Circuit Court of Raleigh County against his wife, Nettie Smith, in which he sought a divorce from the bonds of matrimony, the reconveyance and retransfer of certain properties, real and personal, alleged to have been conveyed and trans-

ferred by him to defendant during coverture, release of defendant's control as to change of beneficiary under a policy of life insurance on plaintiff's life, and the cancellation of a separation agreement dated July 28, 1938. Reference was had to a commissioner in chancery and divorce commissioner, both of whom filed reports. The trial court awarded plaintiff an absolute divorce, decreed that plaintiff pay defendant three hundred dollars as suit money in addition to two hundred dollars theretofore awarded, one hundred dollars a month as temporary alimony, attorneys' fees and court costs; cancelled the contract of July 28, 1938, in so far as it provided for the monthly payment to defendant of three hundred dollars; and refused the prayer of the bill of complaint concerning the properties described therein as having been conveyed and transferred by plaintiff to defendant.

The bill of complaint alleges that plaintiff made a constant effort to make defendant happy and comfortable; that he purchased, established and maintained a home, the title to which was placed in his wife's name; that he conveyed and transferred to her valuable properties and shares of stock; that at defendant's request he received into the home defendant's nephew, who was reared there from babyhood to maturity; that he, at defendant's solicitation, permitted the latter's sister and child to come into and remain in the home for about three years; that he in turn sought to rear a five-year-old niece, daughter of a deceased sister, but defendant was so disagreeable toward plaintiff and the child that it became necessary for the child to leave, though she had no home to which to go. The bill further alleges that defendant was and is a woman of violent temper, who nagged and criticized plaintiff and refused to associate with any of his friends and relatives; that she discouraged plaintiff in having his relatives visit the home, and that without provocation, or upon very slight provocation, she would abuse him, call him vile names and accuse him of seeking association and committing acts of adultery with lewd women; that defendant

was a jealous woman, extravagant in her tastes, who continually made demands upon him for money and that in an effort to have some peace of mind for himself, he entered into the separation agreement of July 28, 1938, whereby he agreed to pay her three hundred dollars monthly, and transferred to her certain shares of stock in a mining company. On the basis of these allegations the bill prays that plaintiff be granted a divorce; that defendant be required to reconvey to plaintiff all properties alleged to have been conveyed and transferred to her; that defendant be required to release to plaintiff the waiver of the right to change the beneficiary upon the life insurance policy; and that the contract of July 28, 1938, be cancelled.

Defendant's answer, filed in opposition to the granting of a divorce, denied in general the material allegations of the bill of complaint, other than those pertaining to jurisdiction, and alleged that plaintiff had committed adultery with Verona Caldwell and Lilly Hayslett; that plaintiff became infected with gonorrhea, and, in turn, caused defendant to become infected, and that plaintiff had acquired the habit of using intoxicating liquor. By way of affirmative relief, defendant alleged that plaintiff had threatened to get a divorce and would withhold any payments of money under the separation contract if defendant undertook to defend, and prayed for the payment of counsel fees and suit money and a decretal judgment against plaintiff for three hundred dollars, with interest, alleged to be in default under the contract of July 28, 1938, and for other sums as they become due under said contract.

The record discloses that defendant at the time the parties were married on September 14, 1916, had a high school and business college education. Plaintiff did not enjoy these or like advantages. However, by industry and effort, with the assistance of his wife, he improved himself mentally and after years of endeavor became successful as a civil and mining engineer. Shortly after their marriage the Smiths moved to Lillybrook in Raleigh County,

where for several years plaintiff was engaged in the opening of a coal mine. The conditions under which plaintiff and defendant lived while at Lillybrook at first were unbearable, but were improved later when the mining company at plaintiff's instance built a modern house into which the Smiths moved, and where they remained during their stay at Lillybrook. After about two and a half years the parties moved to Beckley where for a while plaintiff worked in various engineering offices, and then at a coal mine about twelve miles from Beckley during which time he was away from home except for week-ends. In 1926 plaintiff became engaged in a coal operation on Meadow Creek and at Hollywood in Raleigh County. After differences arose between them, which resulted in Smith taking a separate room in the home, the parties separated under an agreement of February, 1937, which provided that plaintiff pay to defendant two hundred and fifty dollars a month. Thereafter defendant left Beckley and lived for a time with a friend in Akron, Ohio; then with a brother at Ambridge, Pennsylvania; and until May, 1937, with a niece in Pittsburgh. In the latter month defendant returned to Beckley where she stayed at the home for a week, and then returned to Pittsburgh. In August, 1937, plaintiff went to see defendant, and in the following October a reconciliation was effected and defendant returned to Beckley. In February, 1938, she again left but returned in July of the same year, and lived with plaintiff about three weeks. On July 28, 1938, the contract sought to be cancelled was executed, which provided for the monthly payment of three hundred dollars a month and the transfer to defendant of fifty-five shares of the stock of Fire Creek Coal Company. At this time plaintiff's salary was four hundred dollars a month. Defendant returned to Pittsburgh and remained there until February, 1941, when, upon learning that plaintiff had been shot in a controversy involving the operation of one of the mines, she returned to Beckley and visited him at the hospital. Plaintiff claims that upon partial recovery from the gunshot wound, he

went to their home on crutches and defendant drove him from the house. Three weeks later defendant returned to Pittsburgh, and on April 7, 1941, this suit was brought.

The record further discloses numerous conveyances from plaintiff to defendant. The home in Beckley, which originally cost $5,650.00, was acquired in 1929 in the joint names of the parties. Plaintiff conveyed his undivided one-half interest to Mrs. Smith. In 1938 he conveyed to defendant two lots in Rupert valued by him at four thousand dollars. In July of the same year, he transferred to her a one-half interest in the stock of a coal company on Piney River. During the same year plaintiff executed papers so that he could not change, without defendant's consent, the beneficiary in a five thousand dollar policy of life insurance, in which Mrs. Smith was the named beneficiary, and on which there were accumulated dividends in the amount of five or six hundred dollars. Defendant on the contrary had a policy of life insurance for the benefit of her sister upon which plaintiff paid all premiums, and, notwithstanding his request, she declined to name him as the beneficiary therein. In July, 1937, while the parties were separated, plaintiff purchased and caused to be delivered to defendant at Pittsburgh a Buick automobile, and during all the course of the years, notwithstanding the differences between them and the conveyances to defendant, plaintiff paid the taxes on all the properties, including those the title to which was in defendant's name.

The record is voluminous and contains criminations and recriminations. For us to follow all the ramifications of the evidence presented by this record would serve no useful purpose. At the outset it is important to notice that plaintiff seeks a divorce on the statutory ground provided by Acts West Virginia Legislature, 1935, Chapter 35, Section 4(d), which provides that a divorce may be granted for "cruel or inhuman treatment, or reasonable apprehension of bodily hurt". On the other hand defendant does not seek a divorce. She relies in her answer upon categorical denials of the allegations of the bill of complaint,

and charges further that plaintiff's alleged inequitable conduct is a bar to the relief sought by him.

So it can be readily seen that the initial question presented by this record is whether plaintiff is entitled to a divorce on the statutory ground of cruelty. In the appraisal of this question we shall keep in mind that the trial chancellor, having before him the reports of the commissioner in chancery and the divorce commissioner, which were favorable to plaintiff, rendered a decree in plaintiff's favor, which will not be disturbed by this Court on this appeal unless clearly wrong or against the clear preponderance of the evidence. *Wolfe* v. *Wolfe,* 120 W. Va. 389, 198 S. E. 209; *Shipper* v. *Downey,* 119 W. Va. 591, 197 S. E. 355. Likewise this question should be considered under the decisions of this Court which have construed the statutory expression "cruel or inhuman treatment, or reasonable apprehension of bodily hurt" to be simply cruelty. Colson, West Virginia Divorce Law, 43 W. Va. Law Quarterly, 298.

In this jurisdiction violence and apprehension of bodily hurt are not indispensable elements of statutory cruelty as a ground for divorce. *Arnold* v. *Arnold,* 112 W. Va. 481, 164 S. E. 850; *White* v. *White,* 106 W. Va. 680, 146 S. E. 720; *Goff* v. *Goff,* 60 W. Va. 9, 53 S. E. 769. Nor is incompatibility of temper or disposition of itself sufficient as a ground for divorce. *Wills* v. *Wills,* 74 W. Va. 700, 82 S. E. 1092. However, actual violence to constitute ground for divorce must be attended with danger of life, limb or health, or be such as to cause reasonable apprehension of such danger. *Huff* v. *Huff,* 73 W. Va. 330, 80 S. E. 846, 51 L. R. A. (N. S.) 282.

Evidence bearing upon the immediate question was adduced by both plaintiff and defendant. Mrs. Smith's nephew, Buster Pryor, who was reared in the Smith home, testified that he was employed by Hunter Smith at Beelick Knob coal mine; that Smith had been like a father to him, and had treated Mrs. Smith well; that he heard arguments between them; that on one occasion he saw Mrs. Smith under the influence of intoxicating liquor; that she

would nag plaintiff when he would come home late and about various telephone calls which women made to the Smith home, which plaintiff claimed were made by women who desired to order domestic coal which plaintiff sold; that he had seen Verona Caldwell at Beelick Knob, where she was employed in Smith's office, and on several occasions had seen plaintiff with her. Stephen Ginestra, trust officer and assistant cashier at Beckley National Bank and plaintiff's business associate, testified in general that defendant was domineering toward plaintiff. The testimony of Edgar Wirt, an employee in the store at the Beelick Knob mine, is of little importance. In the main he testified that Mrs. Smith inquired of him what he knew about any association of her husband with Verona Caldwell, and when he denied having any knowledge of such association, she doubted the truth of his statement. Plaintiff's brother, Henry Smith, testified that defendant's attitude toward Smith's relatives was not friendly; that she objected to plaintiff being out at night; that she disapproved of the financial assistance which Smith gave his needy relatives; and that she was a person who lost her temper easily. This witness admitted that he did not like Mrs. Smith "Because I never did like the way she treated us family". Mrs. Grace Smith, widow of plaintiff's half brother and mother of an employee working at the Smith mine at Hollywood, testified principally as to defendant's attitude toward plaintiff's relatives. Mrs. Mary Daniels, plaintiff's niece, whose husband was also an employee at the Beelick Knob mine, testified in chief concerning defendant's attitude toward the members of plaintiff's family. These are all of the witnesses called by plaintiff in chief on the question of defendant's alleged cruelty. Each witness, it is to be noted, is a relative, employee or business associate of plaintiff. Plaintiff himself testified in chief to the effect that defendant was a person of quick temper and jealous disposition; that on occasions when he would come home after five o'clock she became angry with him; that she accused him of having illicit relations

with other women; that she caused him to give up certain sports in which he was interested; that because of constant arguments between defendant and himself, her frequent accusations as to his conduct, and her jealous disposition, he became nervous, was unable to sleep and eat, and was hindered in his work; that on one occasion she hit him with an orange which he threw back at her; and that about four years before this suit was brought, when she accused him of having been out with another woman, she threatened to shoot him. Plaintiff's testimony concerning these two claimed incidents was without corroboration.

Various neighbors, evidently disinterested witnesses, called by the defendant, testified that Mrs. Smith was a person of even disposition; that, although they were mutual friends of the Smiths, they had not observed any attitude on her part tending to show that she mistreated plaintiff. This record does not disclose anything which would seriously reflect upon defendant's fidelity. On the other hand, the evidence, in our opinion, clearly shows that plaintiff on a number of occasions had associations with one Lilly Hayslett before her death in December, 1937, and also had associated and corresponded with Verona Caldwell, which correspondence and association extended over a period of years prior to and during the course of the instant trial. The correspondence was couched in terms of intimacy, and though it was had while this suit was being tried, it strongly corroborates the associations had by plaintiff prior thereto. We deem it unnecessary to detail the evidence concerning plaintiff's associations with women other than defendant. Suffice to say this record clearly shows that defendant knew of plaintiff's relations with these other women and so knowing her jealousy was aroused, and it was natural for her to chide and criticize plaintiff in these actions. Moreover, a false charge of infidelity by a wife against her husband does not furnish ground for a divorce. *Wolfe v. Wolfe, supra; Roush* v. *Roush,* 90 W. Va. 491, pt. 1, syl., 111 S. E. 334. In passing, however, we do not hesitate to say that

this record on defendant's charges of plaintiff's adultery does not measure up to the high standard of proof required in this jurisdiction. The only witness for Mrs. Smith whose testimony in chief, if true, would support the charge that defendant committed adultery on one occasion was clearly repudiated by her on cross-examination. In this jurisdiction, "The charge of adultery in divorce suits must be proven by clear, positive and satisfactory evidence. The degree of proof lies in the twilight zone required by 'the beyond a reasonable doubt rule' in criminal cases, and 'the preponderance of evidence rule' in civil cases." *Wolfe* v. *Wolfe, supra,* page 399.

On the question whether plaintiff infected defendant with a venereal disease the evidence conflicts. His failure to examine Doctors Cunningham and Jarrell in his own behalf on this question, and his repeated efforts to have the former disqualified as a witness on the ground of privilege would seem to indicate that he feared that the testimony sought to be adduced by defendant from these witnesses would be adverse to his denial of defendant's charge. In *Mohr* v. *Mohr,* 119 W. Va. 253, 255-257, 193 S. E. 121, and *Wolfe* v. *Wolfe, supra,* this Court held that where a party fails to call an important witness having knowledge of the facts in issue and the absence of the witness, though available, is unexplained, it will be presumed that the testimony of the witness, if given, will be adverse to such party. However, both of these witnesses testified, though not at plaintiff's call. Their testimony, together with that of other witnesses bearing on the immediate issue, including that of plaintiff and defendant, however, presents such a conflict of evidence that we cannot say that the trial chancellor erred in finding in plaintiff's favor on this question.

A careful review of this record has convinced us that the trial chancellor's finding that defendant was guilty of cruel and inhuman treatment under the statute is against the clear preponderance of the evidence. In the first place if defendant did chide, criticize and nag plaintiff as to his

relations with other women, as we have heretofore suggested she was to a large extent induced to do so by knowledge of plaintiff's conduct. Where, as here, the inequitable conduct of a plaintiff in a divorce case has caused or contributed substantially to defendant's offense upon the basis of which a divorce is sought, the right to divorce is barred. *Hatfield* v. *Hatfield,* 113 W. Va. 135, pt. 1 syl., 167 S. E. 89; *Wolfe* v. *Wolfe, supra.* Plaintiff's testimony that she struck him with an orange and threatened to shoot him is without corroboration. "* * * it is not necessary that there should be direct testimony of other witnesses to every act sworn to by plaintiff * * *", *White* v. *White, supra,* pt. 3, syl., but there must be, as held in the last mentioned case, important and material facts testified to by other witnesses or other evidence which strongly tends to strengthen and confirm the charges of the party asserting them. This record, we think, does not contain sufficient testimony or evidence to come within the rule of that case. Plaintiff, therefore, is not entitled to a divorce.

Likewise plaintiff is not entitled to relief as to properties which defendant acquired from plaintiff and the agreement involving a change of beneficiary under the life insurance policy. At all times, plaintiff was *sui juris.* We glean from the record that he was a man of independent judgment and much above average in intelligence. This record contains no evidence of a trust, fraud or undue influence, and, if the transactions were the result of nagging, and annoying importunities, such may well have resulted from his own misconduct; but if not, the relief should not be granted under *Handlan* v. *Handlan,* 42 W. Va. 309, 26 S. E. 179.

The prayer for cancellation of the agreement of July 28, 1938, presents a different question. The record discloses that defendant owns and possesses property of much value acquired from plaintiff. She has a home in which to live and other property which may be converted into cash. Notwithstanding plaintiff's salary was only four hundred

dollars when the contract was executed, he agreed to give defendant three hundred dollars monthly, and the record discloses that plaintiff is greatly indebted and without ready money. A contract for separation is not void on the ground of public policy, where the parties have effected a separation *in presenti*. See generally 17 Am. Jur., Divorce and Separation, Sections 723 and 725, and cases cited thereunder; also: 1 L. R. A. 512, 6 L. R. A. 132, 9 L. R. A. 113, 60 L. R. A. 407, and 12 L. R. A. (N. S.) 848. Nor is the contract inhibited by Section 24, Article 3, Chapter 48, Code, which provides that said Article 3 does not authorize a husband and wife to contract to alter or dissolve the marriage between them. A separation agreement, we think, does not affect the alteration or dissolution of a marriage. However, in this jurisdiction it has been held that a separation agreement will be cancelled and annulled at the instance of the wife "unless it clearly appears to be fair, just, equitable and wholly free from exceptions". *Hartigan* v. *Hartigan,* 58 W. Va. 610, pt. 1, syl., 52 S. E. 720. And since the removal of a wife's disability to contract with her husband (Code, 1931, 48-3-8), a separation contract will be cancelled at the instance of the husband, in whole or in part, where it is unfair, unjust or inequitable. Perhaps the strict rule in the *Hartigan* case should not be applied. Under the statute legalizing contracts between husband and wife, such a contract which, on its face, does not disclose any injustice or inequity or other vitiating circumstance, is presumptively valid, and the sound rule seems to be that the burden is upon the party asserting that the contract is unfair or inequitable. We think, in view of plaintiff's limited income, his indebtedness, and the valuable properties acquired from him by defendant, that the instant contract, though not obtained by fraud or coercion, is decidedly inequitable. The requirement of the three hundred dollar monthly payment is not commensurate with plaintiff's ability to pay and defendant's needs. In this court of equity, we are justified in doing equity between these litigants and, in so doing, we hold

that the contract be cancelled as of the time of the bringing of this suit in so far only as it provides for the monthly payment of three hundred dollars. This leaves the defendant to whatever rights, legal or equitable, which she may have for her maintenance and support. The amounts decreed for suit money, temporary alimony, and attorneys' fees do not seem unreasonable to us, in view of the trial chancellor's findings.

For the foregoing reasons, the decree complained of is reversed, and the cause remanded with direction that a decree be entered in conformity with this opinion.

*Reversed in part; affirmed in part; and remanded with directions.*