# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Kelly Ann Richardson,**
**Respondent Below, Petitioner**

**vs.) No. 19-0862** (Braxton County FC-04-2017-D-35)

**Timothy Eugene Richardson,**
**Petitioner Below, Respondent**

**FILED**
**December 7, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Kelly Ann Richardson, by counsel Kenneth J. Barnett, appeals the August 28, 2019, order of Circuit Court of Braxton County, that affirmed the Family Court of Braxton County's April 9, 2019, "Corrected Final Order" in this divorce case. Respondent Timothy Eugene Richardson, by counsel Jared Frame, filed a response in support of the circuit court's order.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 1993, twenty years prior to the parties' marriage, respondent bought a parcel of land and built a home on it. Respondent lived in the home with his first wife until her death in 2010. Respondent used his deceased wife's life insurance proceeds to pay off the mortgage on the home. Later, in 2010, respondent and petitioner began dating. According to petitioner, respondent proposed marriage several times, but petitioner was reluctant to move from her home. Petitioner avers that respondent promised to convey his home to her if she married him.

Petitioner eventually accepted respondent's marriage proposal, and the parties were married on June 1, 2013. On June 10, 2013, respondent gave petitioner a deed to the property that titled his home in both parties' names.

In 2016, respondent believed that, due to poor accounting practices at his auto repair shop, he faced a tax penalty of more than $12,454.00. In response, one of petitioner's friends helped respondent organize his financial records for the repair shop. Petitioner's friend also drafted a letter and several revised Internal Revenue Service ("IRS") filings on respondent's behalf, which respondent sent to the IRS on January 5, 2017. Petitioner's friend told respondent that she estimated his potential IRS penalty would be less than $100.

1

On January 20, 2017, petitioner discovered that respondent had been having an affair with the Auto Zone employee who delivered parts to respondent's auto repair shop. Petitioner asserts that after she confronted respondent and his paramour at the Auto Zone store, respondent asked an attorney, David Karickhoff, who had prepared the first deed giving petitioner a fifty percent share of the marital home, to prepare a second deed giving petitioner his remaining interest in the home. Respondent claims that he signed the second deed because he believed he owed a significant sum to the IRS. The second deed, dated January 25, 2017, provided:

> That for and in consideration of the sum of Ten and No/100 Dollars ($10.00) cash in hand paid by [petitioner] to [respondent], the receipt whereof being hereby acknowledged, and other valuable considerations, [respondent] does hereby grant and convey unto [petitioner] . . . all of his right, title, interest, claim, and estate in and to that certain lot, tract, or parcel of land[.]

The deed was filed with the Clerk of Braxton County and a copy returned to petitioner on February 7, 2017.

Petitioner avers that in March of 2017 she discovered that respondent had a secret cellphone that she believed he used to conduct extramarital affairs. The parties separated on March 20, 2017, and petitioner filed a petition for divorce on April 6, 2017, claiming irreconcilable differences.

In her testimony before the family court, petitioner asserted that respondent had engaged in several affairs during the party's marriage. Petitioner further testified that respondent voluntarily deeded her a fifty-percent share of the marital home upon the parties' marriage and deeded her the remaining fifty-percent share after she discovered that he was having an affair with the Auto Zone employee.

Lawyer David Karickhoff testified before the family court that he did not necessarily explain to the parties that the second deed would transfer the entirety of the property to petitioner as a gift. Mr. Karickhoff further testified that he did not remember having a discussion with either party regarding the reason for the transfer of the marital home to petitioner only. Conversely, respondent testified that he gave petitioner the second deed due to his tax problems.

The family court entered a final order on March 19, 2019. Petitioner filed a motion for reconsideration, which the family court granted. In its "Corrected Final Order," entered on April 9, 2019, the family court granted the parties a divorce and, among other things, rejected petitioner's assertion that respondent gifted petitioner all interest in the parties' home when he gave her the second deed. The family court noted that respondent testified that it "was never his intent to give [petitioner] the home as her sole property" and he gave petitioner the second deed to avoid potential tax liability. Ultimately, the family court ruled that the marital home was marital property, and that its value on the parties' date of separation was $100,000.00. The family court also divided the parties' vehicles and debts.

Petitioner appealed the family court's order to the circuit court. Following a hearing, the circuit court, by order entered on August 28, 2019, affirmed the family court's order. Specifically, the circuit court upheld the family court's ruling that the second deed "was not an irrevocable gift,

but was a joint decision made by the parties." The circuit court further found that if respondent gave petitioner the deed after being confronted over an affair, then, "at the very least, [respondent] was under duress when the decision was made to transfer the home as [petitioner] had just caused a scene at the Auto Zone over an alleged affair that he had with an employee of the store." The circuit court concluded that it would be unjust to find that the parties' home was petitioner's separate property. The circuit court also upheld the family court's division of the parties' vehicles and debts and the family court's denial of petitioner's request for attorney's fees.

Petitioner now appeals the circuit court's order.

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

Petitioner raises four assignments of error on appeal. Petitioner first argues that the lower courts erred in finding that respondent, via that second deed, did not intend to convey the remainder of the marital home as a gift to petitioner. Respondent counters that he and petitioner made a joint decision in January of 2017 to transfer the home into her name due to the potential tax deficiency he owed on his business. Respondent also claims that petitioner confronted him over his alleged affair and then coerced him into deeding over the marital home to her alone. Respondent contends this does not evidence a gift. Respondent also claims that petitioner "kicked him out" of the home soon after receiving the second deed. Respondent asserts that, at the very least, he was under duress because petitioner "had just caused a public scene at a local business over an alleged affair[.]"

West Virginia case law generally indicates a marked preference for characterizing the property of married persons as marital.

> A conveyance or transfer of property from husband to wife during coverture will not be set aside at husband's instance in a divorce suit where he was, at the time the transaction was made, *sui juris* and the transaction was not charged with a trust and was free from fraud, undue influence or other vitiating circumstance.

Syl. Pt. 5, *Smith v. Smith*, 125 W. Va. 489, 24 S.E.2d 902 (1943).

> [I]n order for property that is transferred from one spouse to the other during marriage to be excluded from the marital property pool, there must be proof that the property was intended as an irrevocable gift. In this regard, jewelry and fur coats are the type of "gift" that can almost be proven by circumstantial evidence; however, when real property, stocks, bonds, or other stores of family wealth are at stake, it requires considerably more than the simple fact that property was transferred from one spouse to the other to establish a qualified *Code*, 48–2–1(f)(4) [1986] gift. In all instances, the burden of proof is upon the spouse who would claim

3

the gift. In this regard, as we said in *Patterson v. Patterson*, 167 W.Va. 1, 277 S.E.2d 709 (1981):

> . . . The court cannot be blind to the obvious fact that most married persons do not contemplate divorce throughout the entire course of a marriage, and that transfers of property between spouses is usually intended for the joint benefit of both. While we must retain the presumption of gift in order to avoid difficult third-party claims (since spouses usually do intend to confer the benefit of property on their other spouse in the event of their death), the presumption of gift is probably best rebutted in a suit between spouses by a clear showing of unjust enrichment. Most people do not intend unjustly to enrich the other man.

*Roig v. Roig*, 178 W. Va. 781, 785, 364 S.E.2d 794, 798 (1987).

Having fully reviewed the copious record on appeal, we find that the circuit court did not err in affirming the family court's finding that the parties' home was marital property and not the sole property of petitioner. Taken as a whole, the evidence supports the finding that the transfer of the marital home into petitioner's name alone was a joint decision by the parties. We also concur with the circuit court's finding that respondent was under duress when he deeded the marital home into petitioner's name alone. At the time, respondent and petitioner had just had a confrontation regarding respondent's alleged paramour. Moreover, given that the home was the parties' major asset, it would also be unjust for petitioner to take sole ownership of it, particularly where respondent built the home prior to his marriage to petitioner, respondent deeded half of the value of the home to petitioner at the onset of the parties' marriage, and the parties' marriage lasted less than five years. Accordingly, we conclude that the circuit court did not err in affirming the family court's ruling that petitioner failed to meet her burden of proof that respondent intended to convey all of his interest in the marital home to her by the second deed.

In petitioner's second assignment of error, she argues that the family court failed to provide her with "*Conrad* credits"[1] for payments she made on marital debts after the parties' separation. Specifically, petitioner appeals the denial of her claim for reimbursement for the property taxes and homeowner's insurance she paid for the marital home *following* the parties' separation and through the pendency of the divorce proceedings. Petitioner admits that she failed to submit any receipts with regard to such payments.

This Court has cautioned that

> "[a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions

---

[1] *See Conrad v. Conrad*, 216 W. Va. 696, 702, 612 S.E.2d 772, 778 (2005) ("[r]ecoupment of payment of marital debt by one party prior to the ultimate division of marital property has often been permitted upon a final equitable distribution order.")

being in favor of the correctness of the judgment." Syllabus Point 5, *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966).

Syl. Pt. 2, *W. Virginia Dep't of Health & Human Res. Emp. Fed. Credit Union v. Tennant*, 215 W. Va. 387, 599 S.E.2d 810 (2004).

As the circuit court noted in the order on appeal, the property taxes and homeowner's insurance costs for which petitioner seeks reimbursement accrued while petitioner had the exclusive use and possession of the marital home. Accordingly, the circuit court found that petitioner was not entitled to *Conrad* credits for her payment of the taxes and homeowner's insurance because she alone received the benefits from those payments. For that reason and given that petitioner failed to meet her burden of proof regarding her alleged payments of the subject debts, we find no error.

In petitioner's third assignment of error, she argues that the family court failed to equitably value and divide five types of marital property. Petitioner first addresses debt on a credit card. She provided a verified financial statement to the family court showing a debt of $2,000 on the credit card. However, petitioner later claimed a debt of $3,357.30 on that card. Petitioner avers that the family court ignored petitioner's updated balance and, instead, valued the debt at $2,000. In its April 9, 2019, order, the family court found that the marital debt on the credit card was $2,000. The family court noted that "the actual amount shown on bills at the time of separation was lower [than $2,000]; however, petitioner listed the outstanding debt on her financial disclosure statement as $2,000.00 and respondent agree[d] to said amount in his proposed order." On appeal, the circuit court found that the family court did not err in relying on petitioner's verified financial statement. We find it disingenuous that petitioner argues that the family court erred in using the number she herself supplied in a verified financial disclosure. Accordingly, we do not find that the family court erred in valuing the debt on the subject credit card at $2,000.

Petitioner next addresses a 2002 Ford Explorer that she valued in her verified financial statement at $2,500. Thereafter, respondent testified the vehicle was worth $2,000, and petitioner testified that the vehicle was worth only $1,500. Petitioner claims the family court ignored these lower valuations and valued the 2002 Explorer at $2,500. The record shows that the family court valued the vehicle at $2,500 based on the testimony and documentation before it. Having reviewed the record on appeal, we find that the family court had a sound basis for its determination and, therefore, conclude that the circuit court did not err in affirming the family court's valuation of the 2002 Ford Explorer.

As for the family court's valuation of the household goods, petitioner argues that the family court erred in finding that she received $1,200 in goods and respondent received $800 in goods. As with its other valuations, the family court based its valuation of the household goods on the parties' testimony and the other evidence presented below. Having reviewed that evidence, we find the circuit court did not abuse its discretion in affirming the family court's order with regard to the valuation and division of the parties' household goods.

With regard to $198.66 in credit card debt for work shoes purchased by respondent, petitioner challenges the family court's determination that this debt was marital. The family court

found that because respondent was self-employed, he was not in a position to be reimbursed by an employer for the work shoes. The family court further found that "it is not uncommon for the average person to use a credit card to purchase . . . shoes, and then to wear [the shoes] for [both] employment and personal use." The family court concluded that it could not find that the work shoes were solely separate property. The circuit court agreed with this reasoning, as do we. Thus, we find no error.

Lastly, petitioner argues that the family court erred in determining that respondent should receive $7,100 in personal property and petitioner should receive $6,082.92 in personal property. Petitioner contends that the family court erred in ruling that no equalization payment was necessary. In its order, the family court reviewed this issue and found that no equalization payment should be made. Having reviewed the record on appeal, we concur and, accordingly, find no error.

In her fourth assignment of error, petitioner argues that the family court failed to properly address her request for attorney's fees under West Virginia Code § 48-1-305(b).[2] In particular, petitioner contests (1) the family court's implication that she could have appeared pro se due to her considerable organizational skills; and (2) its findings that she would soon receive social security disability benefits. With regard to the latter claim, petitioner counters that at the time she filed her petition for appeal with this Court in December of 2019, she had not yet begun receiving social security disability benefits although she had applied for them. Petitioner highlights the fact that she ultimately may not be awarded those benefits. Respondent counters that, in his current job as a contract rural mail carrier, he cannot pay his own monthly expenses, let alone petitioner's attorney's fees.

We have said that,

> "[i]n divorce actions, an award of attorney's fees rests initially within the sound discretion of the family [court] and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family [court judge] should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request." Syl. pt. 4. *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996).

Syl. Pt. 3, *Mayle v. Mayle*, 229 W. Va. 179, 727 S.E.2d 855 (2012). Here, the family court addressed the *Banker* factors as follows: First, the family court addressed each party's ability to pay his or her own attorney's fees and found that "neither party is in any significantly better position than the other[.]" Petitioner is not currently working but receives spousal support from respondent and should soon receive Social Security benefits. Respondent is working but making less than full-time minimum wage. Second, the family court addressed the beneficial results the

---

[2] West Virginia Code § 48-1-305(b) provides, in part, that "[t]he court may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action."

parties obtained from their respective attorneys. The family court found that petitioner's attorney performed diligently but that petitioner could have obtained the same results if she was self-represented given her significant organization skills. Third, regarding the parties' respective financial conditions, the family court found that petitioner is living in a $100,000 home with monthly expenses of about $1,485.00. Respondent is living with his adult child with monthly expenses of $1,800.00. Fourth, the family court addressed the effect on attorney's fees on each party's standard of living and found that neither party had a high standard of living. Fifth, the family court addressed the degree of fault by either party in making the divorce necessary and found that respondent's degree of fault was greater than petitioner's degree of fault. Finally, regarding the reasonableness of petitioner's motion for attorney's fees, the family court found that petitioner's request was reasonable and common. Based on its consideration of all these factors, the family court denied petitioner's motion for attorney's fees.

Clearly, the family court weighed the *Banker* factors, as required by this Court, and found that neither party was in a significantly better position than the other to pay such fees. Having found no abuse of discretion, we will not disturb the order on appeal.

For the foregoing reasons, we affirm the August 28, 2019, order of Circuit Court of Braxton County, that affirmed the Family Court of Braxton County's April 9, 2019, "Corrected Final Order."

Affirmed.

**ISSUED:** December 7, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**DISSENTING:**

Justice Margaret L. Workman

Justice Workman would set for oral argument in accordance with Rule 19 of the West Virginia Rules of Appellate Procedure.